**No. 26-1136**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

THERESA SWEET et al.,
*Plaintiffs-Appellees*,

v.

U.S. DEPARTMENT OF EDUCATION and
LINDA MCMAHON, in her official capacity as Secretary of the U.S. Department of Education,
*Defendants-Appellants*

**On Appeal from the United States District Court for the
Northern District of California
Case No. 4:19-cv-03674-HSG, Hon. Haywood S. Gilliam, Jr.**

## PLAINTIFF-APPELLEES' OPPOSITION TO
## DEFENDANT-APPELLANTS' MOTION FOR STAY PENDING APPEAL

Rebecca C. Ellis
Rebecca C. Eisenbrey
Eileen M. Connor
Noah Zinner
PROJECT ON PREDATORY STUDENT
LENDING
769 Centre Street
Jamaica Plain, MA 02130
rellis@ppsl.org
reisenbrey@ppsl.org
econnor@ppsl.org
nzinner@ppsl.org
Tel.: (617) 390-2669

*Attorneys for Plaintiff-Appellees
Theresa Sweet, Chenelle
Archibald, Daniel Deegan,
Samuel Hood, Tresa Apodaca,
Alicia Davis, Jessica Jacobson,
and all others similarly situated*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................1

BACKGROUND ..................................................................................2

ARGUMENT .......................................................................................8

    I.    There Is No Emergency.........................................................8

    II.   The Motion Violates Fed. R. App. P. 8 and Circuit Rule 27-3...........12

        A.    Defendants Fail to Comply with Fed. R. App. P. 8 .................13

        B.    Defendants Fail to Comply with Circuit Rule 27-3 .................15

    III.  Defendants Fail to Meet the Standard for a Stay or Emergency
        Relief ...........................................................................17

CONCLUSION ...................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564 (1985) ...............................18

*Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d 1137 (D. Nev. 2015) .............10

*Crosby v. Mills*, 413 F.2d 1273 (10th Cir. 1969).....................................................20

*De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874 (9th Cir. 2000) ......... 18, 21

*Everglades College, Inc. v. Cardona*, No. 22A867 (U.S. Apr. 12, 2023)..............15

*Everglades College, Inc. v. McMahon*, No. 25-492 (U.S. Feb. 23, 2026) ...............5

*Hamblen v. County of Los Angeles*, 803 F.2d 462 (9th Cir. 1986) (per curiam).....12

*In re Warren*, 568 F.3d 1113 (9th Cir. 2009) ................................................... 19, 20

*Jeff D. v. Andrus*, 899 F.2d 753 (9th Cir. 1989) .....................................................21

*Justice v. Town of Cicero, Ill.*, 682 F.3d 662 (7th Cir. 2012)..................................19

*Mi Familia Vota v. Fontes*, 111 F.4th 976 (9th Cir. 2024).....................................21

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782 (9th Cir. 2005) ........................................................................................................................18

*Nken v. Holder*, 556 U.S. 418 (2009) ............................................................... 17, 21

*Pure Aqua, Inc. v. Envitec Corp.*, No. 12-cv-01936, 2013 WL 12114610 (C.D. Cal. Oct. 25, 2013) .....................................................................................................10

*Sweet v. Cardona*, 121 F.4th 32 (9th Cir. 2024).......................................................5

*United States v. Norman*, No. 15-cv-1506, 2015 WL 13816020 (M.D. Fla. Oct. 5, 2015) .......................................................................................................... 19, 20

*United States v. Sumner*, 226 F.3d 1005 (9th Cir. 2000).........................................19

*Vasquez Perdomo v. Noem*, 148 F.4th 656 (9th Cir. 2025) .....................................13

*Washington v. Trump*, No. 25-807, 2025 WL 553485 (9th Cir. Feb. 19, 2025) .......................................................................................................... 8-9, 17

*Yarofalchuw v. Cabrera*, No. 1:22-cv-00001, 2023 WL 158701, at *3–4 (D.N. Mar. Is. Jan. 12, 2023)..................................................................................9

**Constitution**

Due Process Clause, U.S. Const. amend. V................................................3

**Statutes**

Administrative Prodecure Act, 5 U.S.C. §§ 555(e), 706(2) .......................3

**Rules**

9th Circuit Rule 27-3................................................................ 1, 8, 12, 15, 16

Federal Rule of Appellate Procedure 8 ........................................ 1, 12, 13

Federal Rule of Appellate Procedure 27.....................................................16

Federal Rule of Civil Procedure 60(b)................................... 6, 7, 10, 11, 13, 18, 21

## INTRODUCTION

It does not require a lengthy background or complex legal analysis to see that Defendant-Appellants' Emergency Motion for a Stay Pending Appeal (Dkt. 6, "Motion") is meritless. Rather, it needs only simple logic: Defendants cannot stay a deadline that has already passed. Defendants had an opportunity to seek a stay before the deadline, and they did not. There is no emergency here.

Even beyond this plain fact, Defendants' motion is defective in several ways, both procedural and substantive. For one, it is not even clear what type of motion this is. Defendants caption their motion as one for a "stay pending appeal"—but they did not comply, nor even attempt to comply, with Federal Rule of Appellate Procedure 8. Defendants also claim to be seeking emergency relief under Circuit Rule 27-3, but they have not complied with that rule either.

Finally, Defendants have no legal right to the substantive relief they seek. Although they invoke this Court's appellate jurisdiction to review two orders of the district court, Defendants are not asking to stay *those* orders, which simply preserved the status quo ante (except for one alteration in Defendants' favor). Rather, they are asking this Court to act, on an emergency basis, to rewrite a Settlement Agreement that has been final for over three years. But modification of the settlement is the very relief that Defendants seek on the merits of their appeal; this motion is a transparent attempt to short-circuit the appellate process and evade the proper standard of

1

review. In any event, Defendants cannot show any abuse of discretion on the part of either district court judge in declining to alter the Settlement Agreement, and thus they have no likelihood of success on the merits. Moreover, Defendants would also have to convince this Court to issue relief *nunc pro tunc*, which is an extraordinary remedy not warranted or clearly available here—never mind the fact that Defendants have not even asked for it. The motion should be denied.

## BACKGROUND

The underlying litigation here is between a certified class of federal student loan borrowers and the U.S. Department of Education ("Department"). Class Members submitted applications to the Department to have their student loans canceled based on misconduct by their schools, in a process known as borrower defense to repayment ("BD").

For the better part of five years, the BD process stood at an unlawful standstill. Plaintiffs initiated this suit in June 2019 to force the Department to restart the process, alleging that its failure to adjudicate BD applications constituted agency action unlawfully withheld or unreasonably delayed under the Administrative Procedure Act ("APA"). *See* App.128.[1] After a finding by the district court of bad

---

[1] Unless otherwise specified, all internal quotation marks, citations, and alterations are omitted from quotations throughout this opposition.

faith by the Department derailed a first attempt at a settlement, *see* App.129, the parties entered into discovery. Based on materials adduced in discovery, Plaintiffs filed a Supplemental Complaint that significantly expanded the scope of the case. They alleged that Defendants adopted an unlawful "presumption of denial" policy for BD applications and issued thousands of unlawful form denial notices pursuant to this policy, in violation of Sections 706(2) and 555(e) of the APA and the Due Process Clause of the U.S. Constitution. App.129. In moving for summary judgment on their updated claims, Plaintiffs sought an order to show cause why every outstanding BD application should not be granted immediately. *See* Plaintiffs' Motion for Summary Judgment, ECF No. 245 at 33–37.

Following a lengthy negotiation process, and with Plaintiffs' summary judgment motion pending, the parties signed the Settlement Agreement at issue here (the "Settlement") on June 22, 2022. App.129–130, 151–190. The Settlement divided Class Members into three groups. The first were those who had applied for BD before the Settlement's execution date and whose applications related to one (or more) of the 151 schools on a list appended to the Settlement, referred to in the litigation as "Exhibit C." App.130, 156–157. These were schools that, the Department agreed, showed indicia of widespread misconduct and had a high number of BD applications associated with them. App.136, 146. Borrowers in this first group would receive automatic relief under the Settlement, consisting of

3

discharges of their relevant federal loans, refunds of amounts paid, and credit repair. App.130. The second group consisted of Class Members who had applied for BD before the Settlement's execution date, but not in relation to an Exhibit C school; those borrowers would receive decisions on their applications under a streamlined process and according to a staggered schedule, set according to how long the application had been pending. *See id.*; App.157–161.

The third Settlement group, the one at issue in this appeal, was referred to as the "Post-Class Applicants." App.161. These borrowers applied for BD between June 23, 2022 (the day after execution of the Settlement) and the date of final approval, which turned out to be November 16, 2022. *See id.*; App.130–131. The Settlement required that Post-Class Applicants receive decisions on their applications within three years of the Settlement's Effective Date, which the district court ultimately held was January 28, 2023. *See* App.161; Supp.A.10. If the Department did not issue a decision on a Post-Class Applicant's BD application by the deadline, the borrower would receive Full Settlement Relief as defined in the Settlement. App.130–131, 161.

After the parties moved for approval of the Settlement, four schools named on Exhibit C moved to intervene in the case, raising various arguments that the

Settlement was allegedly unfair to them.[2] *See* App.131. This is relevant to the present motion only because the intervenors raised the argument, advanced by Defendants now (Dkt. 6 at 2, 5, 15), that Post-Class Applicants were not properly considered members of the Plaintiff Class. App.146–147. In its decision granting final approval of the Settlement, the district court rejected that argument, holding that "the class certification order set no cut-off date for membership, so the class definition as recited in that order clearly encompasses all of these [Post-Class] borrowers." App.147. The Department did not appeal this or any other aspect of the district court's final approval order.

By the time of final approval, it was a matter of record that the Post-Class included at least 179,000 borrowers. App.130. In the Department's first required data report under the Settlement, served on February 27, 2023, the Department reported that there were 205,448 Post-Class Applicants. Supp.A.28.

The parties have engaged in significant post-judgment motion practice in this case, primarily due to the Department's repeated failures to meet the Settlement's deadlines for providing relief to Class Members. *See* App.2. As part of these post-

---

[2] The district court allowed permissive intervention, but that court, the Ninth Circuit, and the Supreme Court all ultimately denied relief. *See* App.131–150; Supp.A.1–25; *Sweet v. Cardona*, 121 F.4th 32 (9th Cir. 2024); Order List: 607 U.S. (Feb. 23, 2026), denying certiorari in *Everglades College, Inc. v. McMahon*, No. 25-492. At each stage, the Department defended the validity of the Settlement.

5

judgment proceedings, the district court held regular status hearings throughout 2024 and 2025. *Id.* At those hearings, whenever Plaintiffs raised the topic of the Post-Class decision deadline, the Department assured the court that it was "committed to providing full settlement relief" and that "if the Department doesn't issue decisions by the deadline for the post-class applicants, then the borrower is entitled to full settlement relief." App.2–3; *see* App.82. But then, despite these storms of assurances, on November 6, 2025, the Department filed a motion pursuant to Federal Rule of Civil Procedure 60(b) to delay the Post-Class decision deadline by 18 months. App.3. Plaintiffs vigorously opposed, including by submitting voluminous documentation of the harms Post-Class Applicants would experience if further delay were allowed. Supp.A.80–287.

The district court held a hearing on December 11, 2025, at which it granted in part and denied in part Defendants' motion. Judge Alsup, who had overseen this litigation since its inception over six years ago, held that an 18-month delay was "just totally unacceptable" under the circumstances, given that the Department had known the size of the Post-Class for years and had repeatedly represented to the court that the adjudication process was on track. App.81–85. The court also emphasized that there was a "huge equity working in favor of the class" because "the student loan has been hanging over their head for how many years? How many decades? Wrecking their credit. . . . It's just not right. Congress didn't want that.

6

Congress wanted these things adjudicated." App.86. The court ruled that the January 28, 2026, deadline should remain in place for Post-Class Applicants whose BD applications related to Exhibit C schools, noting that there was already significant common evidence relating to those schools that should help streamline the decision process. App.86–87. For Post-Class Applicants from other schools, the court granted the Department an extension to April 15, 2026, to issue decisions on those applications. App.87.

The court concluded the December 11 hearing by stating: "I'm not going to do a written order. . . . This is the order. So if you want to appeal, I think you should appeal pronto." App.89–90. Defendants did not do so.

Judge Alsup retired at the end of December 2025, and the case was reassigned to Judge Gilliam on January 8, 2026. App.3. On January 22, 2026—six days before the Exhibit C Post-Class decision deadline—Defendants filed a second Rule 60(b) motion, advancing nearly identical arguments. App.4–5. Defendants argued that the December 11 order was premised on errors of fact and law, and urged Judge Gilliam to reconsider Judge Alsup's decision. App.5. Again, Plaintiffs opposed.

Defendants did not file a motion to stay the December 11 order in the district court, nor seek emergency relief before January 28, 2026. Instead, January 28 came and went. On February 24, 2026, Judge Gilliam denied Defendants' second Rule 60(b) motion, holding that "Defendants have not met their burden to show that

7

application of the *Settlement*'s terms is no longer equitable by pointing to perceived errors committed by the court in adjudicating Defendants' first Rule 60(b) motion." App.5. Further, the court concluded that "the record amply reflects that Defendants have not shown (and indeed, cannot show) that any extraordinary circumstances beyond their control prevented timely action to protect their interests." App.6. The court also rejected, again, the argument that Post-Class Applicants are not Class Members, noting "that argument was already fully considered and rejected." App.5.

The court did, however, grant an extension of the Department's deadline to appeal the December 11 order. App.4. Defendants soon after filed a notice of appeal of both the December 11 and February 24 orders. Three days later, Defendants filed the instant motion in this Court.

## ARGUMENT

### I.    There Is No Emergency

A threshold question for Defendants' "emergency" motion is whether an emergency actually exists. From the outset, the answer to this question is clearly no.

Circuit Rule 27-3 provides that emergency relief is warranted only "[i]f a movant needs relief within 21 days to avoid irreparable harm." Thus, "[i]f the movant fails to demonstrate that irreparable harm will occur immediately, emergency relief is not warranted, and there is no reason to address the merits of the movant's request." *Washington v. Trump*, No. 25-807, 2025 WL 553485, at *1 (9th

8

Cir. Feb. 19, 2025) (Forrest, J., concurring).

Under the Settlement Agreement, "Defendants **will** issue a final decision on the merits of a Post-Class Applicant's application no later than 36 months after the Effective Date." App.161 (emphasis added). Thirty-six months after the Effective Date was January 28, 2026. *See* Supp.A.10. The district court's December 11 order declined to extend this deadline for Exhibit C Post-Class Applicants. App.86–87. The Settlement-mandated deadline was therefore fully in force for those borrowers as of January 28, 2026. The Settlement further provides that "[i]f a Post-Class Applicant has not received a timely decision as required under Paragraph IV.D.1, that applicant **shall** receive Full Settlement Relief." App.161 (emphasis added).

Thus, the "harm" that Defendants complain of—namely, the obligation to provide Full Settlement Relief to Post-Class Exhibit C borrowers who did not receive a decision by January 28, 2026 (Mot. at 1)—*has already occurred*. There can be no "stay" of a deadline that is well in the rearview, and certainly no emergency in seeking to obtain such a "stay." *See, e.g.*, *Yarofalchuw v. Cabrera*, No. 22-cv-00001, 2023 WL 158701, at *3–4 (D.N. Mar. Is. Jan. 12, 2023) (observing that "[c]ommon sense dictates that a stay . . . would stay pending and remaining deadlines—not expired deadlines," and collecting cases). As the Department has acknowledged before, the passage of the January 28 deadline is definitive—under the Settlement and the December 11 order, Post-Class Exhibit C borrowers' rights

9

to Full Settlement Relief vested when that condition occurred. *See* Supp.A.41 ("Under the terms of the Agreement, more than 190,000 [Post-Class Applicants] are now projected to receive full settlement relief . . . because the Department . . . will not be able to adjudicate their applications within the specified three-year timeline."); Supp.A.45 (recognizing "the requirement that [Defendants] be required to provide automatic full settlement relief to post-class applicants who do not receive a decision by January 28, 2026").

Defendants contractually agreed to this deadline when they signed the Settlement over three years ago. App.161. They were well aware of their obligation and knew the deadline was approaching. *See, e.g.*, App.6; App.81–82; App.130–31. They waited until just weeks before the deadline to move for Rule 60(b) relief, and then, after the December 11 order, did not move for a stay or any other emergency relief in either the district court or this Court before the deadline expired. This dilatory conduct does not create an emergency today. *See, e.g.*, *Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d 1137, 1144 (D. Nev. 2015) (rejecting "emergency" motion where "counsel created the emergency situation" by waiting "for more than a month" to bring its motion, despite the fact that "the existence of the current dispute was known to . . . counsel"); *Pure Aqua, Inc. v. Envitec Corp.*, No. 12-cv-01936, 2013 WL 12114610, at *1 (C.D. Cal. Oct. 25, 2013) (denying emergency motion where "the Defendants' purported crisis and need for emergency relief is principally

10

the result of their procrastination and poor planning").

Defendants attempt to escape these obvious conclusions by attaching dispositive importance to the fact that "the Department will be required to provide notice to applicants by March 30 that they will receive full refunds and discharges." Mot. at 2–3. But this notice deadline has no effect at all on the Department's *obligation* to provide Full Settlement Relief to Exhibit C Post-Class Applicants who didn't receive a decision by the deadline. Rather, the notice deadline affects only the *timeline* for providing such relief.[3] According to the Settlement, for Post-Class Applicants for whom the deadline has passed without decision, "Defendants ***shall*** provide [them] with notice that the applicant will receive [Full Settlement] relief within 60 calendar days following the expiration of the applicable deadline." App.161 (emphasis added). This requirement to provide notice is mandatory, triggering with the passage of the decision deadline. It accords with other provisions in the Settlement that provide Class Members with written notice to keep them apprised of their rights, *see, e.g.*, App.156–157 (Settlement ¶¶ IV.A.3, IV.B.1)—it is not an opportunity for the Department to relitigate a Post-Class Applicant's

---

[3] Notably, Defendants did not mention the notice deadline once in their original Rule 60(b) motion. *See generally* Supp.A.29–54. They only began citing that date after it was clear that the decision deadline of January 28, 2026, was going to pass before they moved for a stay or other temporary relief.

11

entitlement to relief. Then, the Settlement instructs that "Defendants will effectuate relief . . . no later than one year after the date that Defendants provide that applicant Written Notice." App.161.

In short, Defendants' obligation to provide relief to these Exhibit C Post-Class Applicants is already established (as the Department admitted it would be in their briefing for the December 11, 2025, hearing). Delaying the March 30 notice timeline will harm Post-Class Applicants by subjecting them to even more delay, with no corresponding advantage for the government: the Department will, ultimately, have to provide the same amount of relief regardless of when they send notice. Defendants thus are not subject to any harm, let alone irreparable harm, within the next 21 days.

## II.    The Motion Violates Fed. R. App. P. 8 and Circuit Rule 27-3

Defendants' motion is titled "Emergency Motion Under Circuit Rule 27-3 for Stay Pending Appeal by March 26, 2026." Dkt. 6. But the motion is ambiguous as to whether it is a motion for a stay—which would be governed by Federal Rule of Appellate Procedure 8—or for some other type of emergency relief. Either way, the motion fails to comply with required procedures. These are not mere technical failures, but rather go to the heart of Defendants' request for relief. *See, e.g.*, *Hamblen v. County of Los Angeles*, 803 F.2d 462, 465 (9th Cir. 1986) (per curiam) ("While failure to comply with a single technical requirement might not be cause for alarm, [defense counsel's] wholesale disregard of the rules of appellate procedure—

12

and those of common sense—makes it impossible for us or opposing counsel to deal with the merits of appellant's contentions.").

## A. Defendants Fail to Comply with Fed. R. App. P. 8

Rule 8(a)(1)(A) provides that "[a] party must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal." A motion for a stay pending appeal "may be made to the court of appeals or to one of its judges," but only if the moving party shows in its motion "that moving first in the district court would be impracticable" or "state that, a motion having been made, the district court denied the motion or failed to afford the relief requested and state any reasons given by the district court for its action." Fed. R. App. P. 8(a)(2)(A).

Here, Defendants did not move for a stay pending appeal in the district court. Nor do they even attempt to make the required showing as to why moving in this Court in the first instance is appropriate. Indeed, Defendants do not cite Rule 8 anywhere in their motion. The motion could, and should, be denied for this reason alone. *See Vasquez Perdomo v. Noem*, 148 F.4th 656, 664 n.1 (9th Cir. 2025) (noting that Court had denied government's previous motion for stay pending appeal "for failure to comply with Federal Rule of Appellate Procedure 8(a)(2)(A)").

In their Rule 27-3 certification—but not in their motion—Defendants state that, in their second Rule 60(b) motion, they requested that "should the court 'deny

13

this motion,' it stay 'the deadline for issuing notices to post-class members' pending 'the disposition of any appeal.'" Dkt. 5 at ii–iii. But this passing reference, located on the final page of a brief addressing a different topic, does not constitute a motion that can satisfy Defendants' obligation under Rule 8. Defendants never argued the merits of a stay before the district court, either legally or factually. *See, e.g.*, *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (issue not properly presented "if the argument was not raised sufficiently for the trial court to rule on it").

Perhaps Defendants do not elaborate on their request for a "stay pending appeal" because a stay of the orders they are appealing would not actually afford them the relief they seek. The orders of December 11 and February 24 simply maintained the status quo under the Settlement for the majority of Post-Class Applicants. Indeed, by insisting that the Post-Class decision deadline should be retroactively invalidated on an emergency basis, the Department seeks not to "preserve the status quo" via a stay, but to "upend it." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 778 (9th Cir. 2018). The December 11 order, in fact, granted part of the relief that Defendants sought: they received an extension of the decision deadline for Post-Class Applicants who did not attend Exhibit C schools. If the December 11 order were stayed, the result would be that these additional Class Members would be immediately entitled to Full Settlement Relief, because the

decision deadline for all Post-Class Applicants would revert to January 28, 2026.

What Defendants are really seeking, then, is not a stay of the December 11 and February 24 orders pending appeal of those orders. Instead, they are seeking for this Court to stay the January 28, 2026, deadline established by the Settlement—the same relief they twice sought, and failed to obtain, from the district court. But the deadline for appealing, and on that basis seeking to stay, any part of the Settlement ran more than three years ago.[4] A substantive alteration of the Settlement certainly is not available via an emergency motion to stay now.

### B. Defendants Fail to Comply with Circuit Rule 27-3

Rule 27-3 requires, first, that "[i]f a movant needs relief within 21 days to avoid irreparable harm, the movant must . . . make every practicable effort to notify the Court and opposing counsel, and to serve the motion, at the earliest possible time." C.R. 27-3(a). Defendants did not make their motion at the "earliest possible

---

[4] When intervenors in this case did argue for a stay of the Settlement in 2023, Defendants argued against it, recognizing that a stay would be unfair. *See, e.g.*, Defendants' Opposition to Intervenors' Motion for Stay Pending Appeal at 1, ECF No. 362 ("[T]he Court should again find that the settlement agreement is lawful and fairly accommodates the interests of both the Department and class members who are deserving of timely relief."); Federal Respondents' Opposition to Application to Stay the Judgment at 4, *Everglades College, Inc. v. Cardona*, No. 22A867 (U.S. Apr. 12, 2023) ("A stay would prejudice the government, the plaintiff class, and the public interest by disrupting the implementation of a settlement that all parties to the litigation have agreed upon.").

time"—that would have been shortly after December 11, 2025. Tellingly, Defendants do not make any attempt to "explain why the motion could not have been filed earlier." C.R. 27-3(c)(iii). Nor are there any affidavits attached to the motion that attest to the existence of an "emergency" now. *See* Fed. R. App. P. 27(a)(2)(B)(i) ("Any affidavit or other paper necessary to support a motion must be served and filed with the motion.").

Next, Rule 27-3 requires the moving party to "submit a Certificate prepared by counsel," which must include certain information and must, according to the Ninth Circuit's Form 16, be signed under penalty of perjury. *See* C.R. 27-3(c); http://www.ca9.uscourts.gov/forms/form16.pdf. Defendants' certification here (which was not submitted on Form 16) does not actually certify that any of the information contained therein is true. Rather, it states: "The undersigned counsel certifies that the following is the information required by Circuit Rule 27-3." Dkt. 5 at i. This weasel-words "certification" is not even accurate in itself, because, as noted, Defendants do not address the required factor of "why the motion could not have been filed earlier." C.R. 27-3(c)(iii). And then, there is no undersigned counsel: the signature line reads simply, "Counsel for Defendants-Appellants," without the signature of any attorney. Dkt. 5 at iii. It is unsurprising that no counsel for Defendants was willing to sign the Rule 27-3 Certification under penalty of perjury, because it is abundantly clear that this filing does not satisfy the Rule's standards.

16

### III. Defendants Fail to Meet the Standard for a Stay or Emergency Relief

A stay pending appeal is an "intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right." *Nken v. Holder*, 556 U.S. 418, 427 (2009). Emergency relief, too, "is the exception, not the rule." *Washington*, 2025 WL 553485, at *1 (Forrest, J., concurring). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of" the court's "discretion" to grant one—namely, by prevailing on four factors: (1) "a strong showing that [it] is likely to succeed on the merits"; (2) that it "will be irreparably injured absent a stay"; (3) that a stay will not "substantially injure the other parties interested in the proceeding"; and (4) that a stay serves "the public interest." *Nken*, 556 U.S. at 433–34. Even assuming Defendants had presented a proper motion for a stay pending appeal (which they have not), they would not be able to satisfy the *Nken* factors.[5]

*1. Likelihood of success on the merits.* First, even if Defendants were to ultimately achieve vacatur of the December 11 and February 24 orders, that would not redress their purported injuries. As explained above, it would simply cause reversion to the existing terms of the Settlement.

---

[5] Tellingly, Defendants make only a single passing reference to the *Nken* factors, without even stating what those factors are. *See* Mot. at 15. The words "likelihood of success" and "irreparable injury" appear nowhere in the motion.

17

In order to achieve their aims, Defendants would have to obtain a substantive alteration of the terms of a contract that they signed, knowingly and voluntarily, and that the district court incorporated into a final judgment over three years ago. They are not likely to succeed in proving that two different district court judges both clearly abused their discretion in finding that no such modification was warranted under Rule 60(b). *See De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000) (a "clear showing of abuse of discretion" is required to reverse the denial of a Rule 60(b) motion). Particularly given Judge Alsup's long and active involvement in the particulars of this case, and two courts' consideration of substantial record evidence in reaching their decisions, Defendants will not be able to show that that "the district court committed a clear error of judgment in the conclusion it reached." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 798 (9th Cir. 2005). The standard for appellate review under these circumstances is very deferential; Defendants cannot simply ask the appellate court to look at the same facts and reach a different conclusion. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). Further, Defendants' primary argument here—that the district court's refusal to modify the Settlement elevates the interests of non-class members (Mot. at 15–20)—is facially contrary to the law of the case, as the district court established

18

in the final approval order that Post-Class Applicants are Class Members, App.147, and Defendants never appealed that ruling.

What is more, because the January 28, 2026, deadline has passed, Defendants would have to convince this Court to issue its judgment *nunc pro tunc*—retroactive to before the deadline. But Defendants have not requested such treatment, nor can they show they are entitled to it. "*Nunc pro tunc* signifies now for then, or in other words, a thing is done now, which shall have [the] same legal force and effect as if done at [the] time when it ought to have been done." *In re Warren*, 568 F.3d 1113, 1116 n.1 (9th Cir. 2009). *Nunc pro tunc* judgments are meant to "mak[e] the record reflect what the . . . court actually intended to do at an earlier date, but which it did not sufficiently express or did not accomplish due to some error or inadvertence." *United States v. Sumner*, 226 F.3d 1005, 1010 (9th Cir. 2000); *see also Justice v. Town of Cicero, Ill.*, 682 F.3d 662, 664 (7th Cir. 2012) (Easterbrook, J.) ("A judge has the power to change records so that they show what actually happened."). The power to issue orders *nunc pro tunc* "does not, however, allow the court to alter the substance of that which actually transpired or to backdate events to serve some other purpose." *Warren*, 568 F.3d at 1116 n.1.

Here, Defendants "cite[] no authority allowing a retrospective extension" of a deadline that has already passed. *United States v. Norman*, No. 15-cv-1506, 2015 WL 13816020, at *1 (M.D. Fla. Oct. 5, 2015) (citing *Justice*, 682 F.3d at 664)

19

(denying state government's untimely motion to intervene in *qui tam* action). No such authority exists, because doing so would "destroy the order and affect the rights of the parties thereunder. An order may be entered *nunc pro tunc* to make the record speak the truth but it cannot supply an order which in fact was not previously made." *Id.* at *2 (quoting *Crosby v. Mills*, 413 F.2d 1273, 1277 (10th Cir. 1969)). Defendants thus have no likelihood of succeeding in an argument that this Court should "backdate" Defendants' appeal to a time before the deadline expired. *Warren*, 568 F.3d at 1116 n.1.

**2. Irreparable injury.** For the reasons explained above, Defendants cannot show that they will suffer irreparable injury absent a stay. As Defendants have previously recognized, their obligation to provide Full Settlement Relief to Exhibit C Post-Class Applicants who didn't receive a decision by the deadline has already vested. Any delay of the March 30 notice deadline is simply delaying the inevitable. A stay pending appeal cannot send Defendants back in time to before they incurred these obligations.[6]

**3. Harm to other parties and the public interest.** Defendants spend the

---

[6] Defendants' assertions about the cost of the Settlement deadline, *see* Mot. at 11, are misleading and artificially inflated, for reasons Plaintiffs explained at length in the district court. *See* Supp.A.73–78. Regardless, the amount of Settlement relief is irrelevant to whether Defendants have a legal obligation to provide it.

majority of their brief arguing that the "equities" favor their position. *See* Motion at 15–23. This is neither one of the most important *Nken* factors, *see, e.g.*, *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024) (likelihood of success and irreparable injury "are the most critical" factors), nor is it a successful argument on its own terms. To begin, the equities of Defendants' Rule 60(b) motions were extensively litigated below, and the district court twice found that they favor Plaintiffs. *See* App.5–6; App.81–88. Under proper appellate procedure, a merits panel would decide whether the district court clearly abused its discretion by finding that the equities favored largely retaining the Settlement's decision timelines. *See De Saracho*, 206 F.3d at 880. Defendants' motion is, in essence, a backdoor attempt to obtain an early determination of the merits of their appeal. By repeating the same arguments that they made twice to the district court, Defendants are using this motion to seek a third bite at the apple under a *de novo* standard, hoping that this Court will accept what the district court rejected without consideration of the standard of review.

Moreover, the Settlement is a contract. If Defendants want to alter the terms of a contract, they must resort to contract law, not equity. *See, e.g.*, *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) ("An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law."). But Defendants did not raise any contract arguments or seek any contract remedies

21

in the district court, so they cannot do so now on appeal.[7] *See In re Mercury*, 618 F.3d at 992 ("We apply a general rule against entertaining arguments on appeal that were not presented or developed before the district court." (internal quotation marks omitted)).

## CONCLUSION

For the reasons stated above, Defendants' motion for a stay pending appeal and/or for emergency relief should be denied.

If this Court should grant Defendants' motion, Plaintiffs respectfully request that the appeal be expedited.

---

[7] As it happens, the Settlement provided a procedure for the circumstances here. If Defendants' position is that they were "reasonably prevented from or delayed in fully performing any of the obligations set forth in" the Settlement "due to extraordinary circumstances beyond Defendants' control," then they were required to initiate a meet-and-confer process with Plaintiffs within 14 days of realizing this state of affairs. App.169–70 (Settlement ¶ V.D.5). If the parties could not "agree as to whether extraordinary circumstances exist or what the appropriate length of an extension is," then Plaintiffs could "raise a claim of material breach . . . with the Court prior to the expiration of the [relevant] timelines," and Defendants would be "permitted to oppose the filing of such a claim upon the grounds of extraordinary circumstances." App.170. At that point, the district court would "have jurisdiction to determine whether Defendants are entitled to any extension of the deadlines . . . on the basis of extraordinary circumstances." *Id.* Defendants never invoked this provision; to the contrary, they denied that it applied at all. *See* Supp.A.42–43.

22

Dated: March 9, 2026

/s/___*Rebecca C. Ellis*___

Rebecca C. Ellis
Rebecca C. Eisenbrey
Eileen M. Connor
Noah Zinner
PROJECT ON PREDATORY
STUDENT LENDING
769 Centre Street, Suite 166
Jamaica Plain, MA 02130
rellis@ppsl.org
reisenbrey@ppsl.org
econnor@ppsl.org
nzinner@ppsl.org
Tel.: (617) 390-2669

*Attorneys for Plaintiff-Appellees*
*Theresa Sweet, Chenelle Archibald,*
*Daniel Deegan, Samuel Hood, Tresa*
*Apodaca, Alicia Davis, and Jessica*
*Jacobson and all others similarly*
*situated*

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this motion complies with the limits set forth in Ninth Circuit Rules 27-1(1)(d) and 32-3(2) because, excluding the parts of the document exempted by Fed. R. App. P. 27(a)(2)(B), it contains 5,506 words.

This motion complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(5), and the type-style requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

Dated: March 9, 2026

/s/   *Rebecca C. Ellis*_____
Rebecca C. Ellis

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: March 9, 2026

/s/  *Rebecca C. Ellis*
Rebecca C. Ellis