No. 26-1136

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Theresa Sweet, *et al.*,

*Plaintiffs-Appellees*,

v.

Linda McMahon, in her official capacity as Secretary of the United States Department of Education, and the United States Department of Education,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of California

**REPLY IN SUPPORT OF EMERGENCY MOTION
UNDER CIRCUIT RULE 27-3
FOR STAY PENDING APPEAL BY MARCH 26, 2026**

BRETT A. SHUMATE
*Assistant Attorney General*

MICHAEL S. RAAB
SEAN R. JANDA
*Attorneys, Appellate Staff*
*Civil Division, Room 7260*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*202-514-3388*

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ............................................................................. 1

ARGUMENT ............................................................................................................ 3

      A.     A Stay of the Post-Class Deadline Pending Appeal Is Warranted on the Merits ............................................................................................ 3

      B.     Plaintiffs' Procedural Objections Are Unavailing .............................. 7

CONCLUSION ....................................................................................................... 12

CERTIFICATE OF COMPLIANCE

## INTRODUCTION AND SUMMARY

The stakes of this stay motion are stark: absent modification of the post-class adjudication deadline, the Department of Education must provide $11 billion in refunds and discharges to hundreds of thousands of non-parties whose claims for relief have not been adjudicated on the merits. And it must do so even though it has been diligently implementing the settlement—and has almost completely finished implementing it with respect to the parties to the litigation, including by providing $12 billion in relief to nearly 300,000 borrowers—with limited resources for years and even though Congress last year appropriated additional funds that will allow the Department to adjudicate the remaining applications with a reasonable extension. That multibillion dollar windfall would cause serious harm to the government and public.

By contrast, there are no significant equities weighing against modification of the deadline. Post-class applicants are not parties to this case whose interests the district court's equitable authority would properly take into account. And in any event, the harm to the Department outweighs any harm to the post-class applicants because, even under the Department's extension, they will receive decisions within the next sixteen months—and their loans will remain in forbearance in the meantime, such that they are not required to make payments.

In response, plaintiffs barely develop any argument about the relevant equities. They do not meaningfully dispute that, absent modification, the taxpayers will be

1

required to provide billions of dollars in automatic relief to post-class applicants regardless of the merits of their claims. They develop no argument for why the post-class applicants should be treated as plaintiffs or why their interests as non-parties should be given substantial weight. They do not defend the district court's patently erroneous conclusion that the Department could have met the deadline by adjudicating 170,000 applications in six weeks. They do not dispute that any payments the government makes during the pendency of this appeal may well not be recoverable even if the government were to prevail. And they do not offer any compelling reason why equity would prefer that the Department provide $11 billion in automatic relief to non-parties rather than that the Department receive a reasonable extension of the previous deadline to allow it to address those applications on the merits.

    Instead, plaintiffs offer a hodgepodge of underdeveloped assertions and attempt to identify a variety of asserted procedural foot faults with the government's request for emergency relief. None is persuasive on its own terms. And none warrants requiring the Department to provide billions of dollars in unwarranted relief pending the disposition of this appeal. A stay should be granted.

# ARGUMENT

## A. A Stay of the Post-Class Deadline Pending Appeal Is Warranted on the Merits

**1.** At the outset, plaintiffs briefly question whether the district court possessed equitable authority to modify the deadline in the settlement; in plaintiffs' view, because the settlement is a contract, "contract law, not equity," should govern any modification request. Opp. 21. But as plaintiffs do not dispute, the settlement agreement was incorporated into the court's judgment and the court retained jurisdiction to enforce it. *See* Mot. 7. Thus, under this Court's precedent, deadlines established in the agreement may be modified—like any other judgment—by the district court if equity supports that result. *See* Mot. 14; *see also Kelly v. Wengler*, 822 F.3d 1085, 1094-98 (9th Cir. 2016). Such modification is particularly appropriate in circumstances, like this one, where public officials have agreed to much more than federal law requires, thereby depriving future officials of the policy discretion they would otherwise enjoy. *See* Mot. 14.

Indeed, as plaintiffs note, they have spent the last three years engaging in "significant post-judgment motion practice" to enforce terms of the agreement, Opp. 5—enforcement that could only be permissible in district court if the settlement is incorporated into the final judgment and is not merely a contract, *cf. North Side Lumber Co. v. Block*, 753 F.2d 1482, 1486 (9th Cir. 1985) (explaining that parties may not enforce contracts with the government through injunctions in district court). Having

3

repeatedly invoked the district court's continuing jurisdiction over the settlement for their own benefit, plaintiffs cannot complain that the government now seeks to rely on that same feature of the settlement to modify the post-class deadline.

Nor do plaintiffs make headway when they note that, to prevail, the government will be required to demonstrate that an alteration of the settlement is warranted notwithstanding that the government agreed to those terms. *See* Opp. 18. The government understands that Rule 60(b) relief may only be granted on a showing that the equities no longer support application of the judgment as entered. But as explained, this Court's cases recognize that consent judgments—like other judgments—are subject to modification on this basis, and plaintiffs nowhere contend that those cases do not apply here.

**2.** Plaintiffs have no persuasive response to the government's explanation why the equities compel extension of the post-class deadline.

On the one hand, plaintiffs do not meaningfully dispute that the government and public have substantial interests in modifying the deadline, because enforcing it would result in the government's providing more than $11 billion in discharges and refunds to borrowers whose applications have not been adjudicated on the merits. *See* Mot. 15-16. Plaintiffs' only engagement with that harm is their statement, in a footnote, that the government's $11 billion estimate is "misleading and artificially inflated." Opp. 20 n.6. But plaintiffs provide no evidence rebutting the Department's calculations nor do they develop any argument why they are incorrect. To the extent

4

that plaintiffs mean to suggest that some portion of the post-class applicants would be entitled to relief on the merits, that is irrelevant. Even if only 10% of the automatic relief were unwarranted on the merits (an assumption without backing in the record), that would still constitute an inordinate windfall of more than $1 billion to post-class applicants at taxpayer expense.

On the other side of the equitable balance, plaintiffs do not dispute that the actual class members in this case (as distinct from the post-class applicants) have no substantial interest in maintaining the post-class deadline. Nor do plaintiffs dispute that the interests of non-parties may not receive substantial weight in the equitable calculus. Nor do plaintiffs develop any argument that the post-class applicants are properly treated as plaintiffs for these purposes. *See* Mot. 16-20.

Instead, plaintiffs contend, in a single sentence and without any elaboration, that the government's argument regarding the non-plaintiff status of post-class applicants "is facially contrary to the law of the case, as the district court established in the final approval order that Post-Class Applicants are Class Members." Opp. 18-19. That brief assertion is unavailing. For one, plaintiffs do not contest that under the express terms of the settlement—which is itself incorporated into the final judgment and thereby supersedes any previous order of the district court—post-class applicants are carved out of the plaintiff class. *See* Mot. 17. Nor do plaintiffs respond to the government's explanation that although the district court's approval order considered whether the post-class applicants were treated fairly by the settlement, that order did

5

not purport to override the parties' agreement regarding the scope of the class. *See* Mot. 19-20.

Even if the district court had clearly (though erroneously) held that post-class applicants are class members, plaintiffs do not cite any law explaining the contours of the law-of-the-case doctrine or develop any argument about why it applies here. That failure is particularly glaring given that this appeal involves a Rule 60(b) motion to modify the judgment. Plaintiffs nowhere explain how, as a logical matter, the law-of-the-case doctrine could apply to prevent a party from claiming error in the judgment that the party seeks to modify.

**3.** Plaintiffs' remaining stray merits arguments are also unpersuasive. Plaintiffs briefly assert that the government improperly delayed moving for relief from the judgment. *See* Opp. 10. But plaintiffs nowhere grapple with the government's explanation that it was Congress's additional funding in the summer of 2025 that, for the first time, enabled the Department to develop a plan to complete the post-class adjudications within a reasonable timeframe. *See* Mot. 22-23.

Plaintiffs also assert that the government improperly focuses its stay motion on "arguing that the 'equities'" compel relief even though the balance of the equities is not "one of the most important *Nken* factors." Opp. 20-21. But the merits question in this appeal is whether the equities support the government's modification request. *Cf.* Fed. R. Civ. P. 60(b)(5) (allowing for relief from a judgment if applying it "prospectively is no longer equitable"). Thus, the merits and the equities merge here,

6

and the government's explanation for why the equities favored modifying the deadline is an explanation for why the government is likely to succeed on appeal.

## B. Plaintiffs' Procedural Objections Are Unavailing

In addition to their cursory merits arguments, plaintiffs raise various procedural objections to the government's stay request. None provides any basis for denying the motion.

**1.** At the outset, plaintiffs contend (at 9-10) that this Court may not properly stay the January 2026 deadline in the final judgment because that deadline has now passed. But a stay of a district court order simply "suspend[s]" the "order or judgment in question" temporarily, *Nken v. Holder*, 556 U.S. 418, 428-29 (2009), and there is no reason to believe that such a suspension may only be implemented before the relevant portion of the order takes effect. To the contrary, any such limitation would be inconsistent with the routine practice of the courts. For example, "[c]ourts—including the Supreme Court" and this Court—"routinely stay already-effective agency action" pursuant to 5 U.S.C. § 705. *National TPS All. v. Noem*, 773 F. Supp. 3d 807, 834 (quotation omitted), *aff'd*, 150 F.4th 1000 (9th Cir. 2025). Similarly, the Supreme Court and this Court routinely stay district court orders pending appeal even after those orders have taken effect. *See, e.g., Garland v. VanDerStok*, No. 23A82 (U.S. Aug. 8, 2023) (staying "June 30, 2023 order and July 5, 2023 judgment").

As support for their contrary view, plaintiffs cite only a single unpublished case from the District of the Northern Mariana Islands. *See Yarofalchuw v. Cabrera*, No. 22-

7

cv-00001, 2023 WL 158701, at *3-4 (D.N. Mar. Is. Jan. 12, 2023). But that case—in addition to not binding this Court—does not stand for the proposition that plaintiffs assert. There, the district court concluded only that its previous order staying deadlines in a scheduling order did not operate to stay past deadlines or retroactively excuse noncompliance with those deadlines. *See id.* The court did not conclude that courts generally lack power to grant retrospective stay relief. And plaintiffs cite no authority to support that broader proposition. Regardless, even if the Court were not inclined to stay the January deadline, it should at least prospectively stay the March 30 deadline for providing notice to the post-class applicants.

Plaintiffs make no more headway when they assert that any stay of the deadline would have to come as part of a *nunc pro tunc* order subject to certain restrictions. *See* Opp. 19-20. Indeed, the primary case cited by plaintiffs for that proposition refutes their point. There, this Court concluded that a "bankruptcy court acted within its discretion" in entering an order "waiving" a statutory "filing requirement even though the" filing deadline set by the statute "had passed." *In re Warren*, 568 F.3d 1113, 1115 (9th Cir. 2009). Although the Court stated that the bankruptcy court had erred in "designat[ing] its order as *nunc pro tunc* in an attempt to backdate the order to fall within the" statutory deadline, *id.* at 1116 n.1, the Court also held that the bankruptcy court had the substantive discretion to enter the order after the deadline—without any need to designate the order as *nunc pro tunc*, *see id.* at 1119. So too here: this Court

8

retains the equitable authority to modify the January deadline, without any need to engage in a *nunc pro tunc* backdating of its order.

**2.** Plaintiffs repeatedly argue that a stay (or, ultimately, vacatur) of the district court's orders denying the government's motions to modify the judgment would not have the effect of providing any relief to the Department. *See* Opp. 11, 12, 14-15, 17, 20. But that is, indeed, why the government's motion did not request a stay of those orders but instead requested "a stay of the post-class application deadline"—that is, the January 28, 2026, deadline incorporated into the final judgment. *See* Mot. 23, *see also* Mot. 2-3. Plaintiffs nowhere contest that a stay of that deadline would provide precisely the relief that the Department requires, by relieving it of the obligation to provide automatic relief to post-class applicants whose applications are not adjudicated by that deadline.

Plaintiffs' related arguments that the government's motion is improper because the government seeks "the same relief they twice sought, and failed to obtain, from the district court," Opp. 15, "repeat[s] the same arguments that [it] made twice to the district court," Opp. 21, and seeks "an early determination of the merits of [the] appeal," Opp. 21, are hard to understand. Of course the government is seeking the same relief from this Court that it sought in district court and making the same arguments to this Court that it made in district court. That is the point of an appeal. And it is generally the case that "the motions panel" considering a motion for a stay pending appeal "is predicting the likelihood of success of the appeal." *East Bay*

9

*Sanctuary Covenant v. Biden*, 993 F.3d 640, 656 (9th Cir. 2021). Nothing about that potential overlap reflects an impropriety in the request for emergency relief.

**3.** Finally, plaintiffs' contentions that the government failed to comply with Federal Rule of Appellate Procedure 8 and Circuit Rule 27-3 are meritless. As to Rule 8, which provides that a "party must ordinarily move first in the district court" for any "stay of the judgment or order of a district court pending appeal," Fed. R. App. P. 8(a)(1), the government complied with that rule by explicitly requesting that the district court stay "the deadline for issuing notices to post-class members" pending any appeal. *See* Dkt. No. 514, at 24. Plaintiffs complain (at 13-14) that this request came as part of the government's motion to modify the judgment rather than as a standalone stay motion. But plaintiffs cite no authority—in Rule 8 or in this Court's caselaw—supporting the proposition that Rule 8 requires a standalone motion rather than a request embedded in the party's underlying substantive motion. Nor do plaintiffs develop any argument that they or the district court were prejudiced by the government's decision to make both requests together. That is particularly true given the overlap in this case between the equitable factors relevant to the government's stay request and the underlying merits of the government's motion to modify the judgment.

Plaintiffs also contend that the government failed to comply with Circuit Rule 27-3, which requires a party filing an emergency motion to "submit a Certificate prepared by counsel" containing specified information. Cir. R. 27-3(c). The

10

government did file such a certificate. *See* Dkt. No. 5 (Feb. 27, 2026). And although plaintiffs complain (at 16) that the certificate did not explain why the government could not have filed its motion earlier, the district court denied the government's motion on February 24 and the government promptly filed its emergency motion in this Court three days later—at 9:40 AM PST on February 27. Plaintiffs' additional contentions (at 16) that the government failed to attach "affidavits" to its certificate or to sign the certificate "under penalty of perjury" are unavailing, because Circuit Rule 27-3 does not require any affidavits or signatures under penalty of perjury. *See* Cir. R. 27-3(a)-(c).[1]

---

[1] Plaintiffs also argue (at 16) that the government failed to include "the signature of any attorney" on the certificate and suggest with no foundation that "no counsel for Defendants was willing to sign" the certificate. The undersigned attorney—who filed the Rule 27-3 certificate through the electronic-filing system and who intended to electronically sign the certificate—apologizes for the oversight but understands that he was deemed to have signed the certificate by virtue of the filing. *See* Fed. R. App. 25(a)(2)(B)(3) ("A filing made through a person's electronic-filing account and authorized by that person, together with that person's name on a signature block, constitutes the person's signature."). Nonetheless, if the Court requests, undersigned counsel will file an amended certificate with an express electronic signature.

11

## CONCLUSION

For the foregoing reasons and those in the government's motion, the Court should grant a stay of the post-class application deadline—or, at the least, a stay of the March 30 notice deadline—pending appeal by March 26.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

MICHAEL S. RAAB

*/s/ Sean R. Janda*
SEAN R. JANDA
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7260*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3388*

March 2026

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limit of Circuit Rules 27-1(1)(d) and 32-3(2) because it contains 2789 words. This reply also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Sean R. Janda*
SEAN R. JANDA