**No. 26-1136**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THERESA SWEET et al.,
*Plaintiffs-Appellees*,

v.

U.S. DEPARTMENT OF EDUCATION and
LINDA MCMAHON, in her official capacity as Secretary of the U.S. Department
of Education,
*Defendants-Appellants*

**On Appeal from the United States District Court for the
Northern District of California
Case No. 19-cv-03674-HSG, Hon. William Alsup &
Hon. Haywood S. Gilliam, Jr.**

## PLAINTIFF-APPELLEES' OPPOSITION BRIEF

Rebecca C. Ellis
Rebecca C. Eisenbrey
Eileen M. Connor
Noah Zinner
PROJECT ON PREDATORY STUDENT
LENDING
769 Centre Street
Jamaica Plain, MA 02130
rellis@ppsl.org
reisenbrey@ppsl.org
econnor@ppsl.org
nzinner@ppsl.org
Tel.: (617) 390-2669

*Attorneys for Plaintiff-Appellees
Theresa Sweet, Chenelle
Archibald, Daniel Deegan,
Samuel Hood, Tresa Apodaca,
Alicia Davis, Jessica Jacobson,
and all others similarly situated*

## TABLE OF CONTENTS

STATEMENT OF JURISDICTION..............................................................................1

STATEMENT OF THE ISSUE...................................................................................1

INTRODUCTION .......................................................................................................2

STATEMENT OF THE CASE....................................................................................4

 I.  The *Sweet* Litigation..............................................................................4

 II.  The Settlement Agreement and Final Approval.....................................7

 III.  The Post-Judgment Proceedings ..........................................................10

STANDARD OF REVIEW .......................................................................................16

SUMMARY OF ARGUMENT .................................................................................17

ARGUMENT ............................................................................................................18

 I.  The District Court Did Not Clearly Abuse Its Discretion...................18

   A. This Court Does Not Re-Weigh the Equities on Abuse of Discretion Review..........................................................................20

   B. The District Court's Factual Findings Are Supported by the Record ...............................................................................................26

   C. The District Court Did Not Err by Treating Post-Class Applicants as Class Members, in Keeping with the Final Approval Order ......................................................................32

 II.  The Retroactive Relief the Department Seeks Is Not Available to It...............................................................................36

   A. The Deadlines Have Already Passed ........................................36

   B. *Nunc Pro Tunc* Relief Is Not Available Here ..........................40

CONCLUSION.........................................................................................................43

# TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton*, 521 U.S. 203 (1997) ................................................................22

*Askins v. U.S. Dep't of Homeland Security*, 899 F.3d 1035 (9th Cir. 2018)...........34

*Bailey v. Miller*, 368 F. App'x 802 (9th Cir. 2010) ...............................................17

*Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025) ......................................................................................................................35

*Chula Vista Police Officers' Ass'n v. Cole*, 107 Cal. App. 3d 242 (Cal. Ct. App. 1980) .....................................................................................................................39

*Coleman v. Brown*, 922 F. Supp. 2d 1004 (E.D. Cal. 2013) ............................ 22, 32

*Crosby v. Mills*, 413 F.2d 1273 (10th Cir. 1969) ...................................................41

*Cummings v. Greater Cleveland Transit Auth.*, 865 F.3d 844 (6th Cir. 2017) .......22

*De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874 (9th Cir. 2000) ................16

*Dittman v. California,* 191 F.3d 1020 (9th Cir. 1999)..............................................17

*Everglades College, Inc. v. Cardona*, No. 22A867 (U.S. Apr. 12, 2023)...............27

*Everglades College, Inc. v. Dep't of Educ.*, No. 12-15049 (9th Cir. Mar. 9, 2023) ...................................................................................................................27

*Everglades College, Inc. v. McMahon*, No. 25-492 (U.S. Feb. 23, 2026) ...............9

*Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024 (9th Cir. 2008) ...........40

*GCIU-Emp. Ret. Fund v. MNG Enters., Inc.*, 51 F.4th 1092 (9th Cir. 2022) .........40

*Gypsum Resources, LLC v. Clark County*, 674 F. Supp. 3d 985 (D. Nev. 2023) .....................................................................................................................39

*In re IFC Credit Corp.*, 663 F.3d 315 (7th Cir. 2011)..............................................41

*In re Liu*, No. 24-3522, 2025 WL 1588736 (9th Cir. June 5, 2025).......................21

*In re Warren*, 568 F.3d 1113 (9th Cir. 2009) .......................................... 40, 41, 43

*Jeff D. v. Andrus*, 899 F.2d 753 (9th Cir. 1989) ....................................................38

*Justice v. Town of Cicero, Ill.*, 682 F.3d 662 (7th Cir. 2012)...................... 40, 41, 43

*Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831 (7th Cir. 2005) ...........................29

*Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018 (9th Cir. 1989)..........39

*Kingdom v. Lamerque*, 392 F. App'x 520 (9th Cir. 2010) .......................................30

*Kusay v. United States*, 62 F.3d 192 (7th Cir. 1995)...............................................41

*Madera Irrigation Dist. v. Hancock*, 985 F.2d 1397 (9th Cir. 1993).....................39

*Molloy v. Wilson*, 878 F.2d 313 (9th Cir. 1989).....................................................16

*Ms. L. v. U.S. Immigration & Customs Enforcement*, 787 F. Supp. 3d 1110 (S.D. Cal. 2025) ........................................................................................................39

*Musacchio v. United States*, 577 U.S. 237 (2016)...................................................34

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782 (9th Cir. 2005) ...............................................................................................................20

*Navajo Nation v. Dep't of Interior*, 876 F.3d 1144 (9th Cir. 2017) ................. 19, 29

*Nken v. Holder*, 556 U.S. 418 (2009) .....................................................................16

*Puckett v. United States*, 556 U.S. 129 (2009) .......................................................35

*Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992).................... 16, 18, 19

*S.E.C. v. Coldicutt*, 258 F.3d 939 (9th Cir. 2001) .......................................... 18, 19

*Sage v. Cent. R.R. Co. of Iowa*, 93 U.S. 412 (1876)...............................................42

*Schwartz v. United States*, 976 F.2d 213 (4th Cir. 1992) .......................................21

*Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713 (11th Cir. 2014) ...........................................................................................................41

*Sweet v. Cardona*, 121 F.4th 32 (9th Cir. 2024)......................................................9

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025)................................................. 17, 35, 36

*United States v. Depue*, 912 F.3d 1227 (9th Cir. 2019)..........................................34

*United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009)................................. 17, 20

*United States v. Hougen*, 76 F.4th 805 (9th Cir. 2023) ..........................................35

*United States v. Jingles*, 702 F.3d 494 (9th Cir. 2012).................................... 33, 34

*United States v. Lummi Indian Tribe*, 235 F.3d 443 (9th Cir. 2000)......................34

*United States v. Norman*, No. 8:15-cv-1506, 2015 WL 13816020 (M.D. Fla. Oct. 5, 2015) ..............................................................................................41

*United States v. Olano*, 507 U.S. 725 (1993) ...........................................................34

*United States v. Sumner*, 226 F.3d 1005 (9th Cir. 2000).........................................40

*W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519 (9th Cir. 1990).........42

*Wing v. Asarco*, Inc., 114 F.3d 986 (9th Cir. 1997)................................................20

**Statutes**

5 U.S.C. § 555(e) ........................................................................................................6

5 U.S.C. § 706(2) ........................................................................................................6

20 U.S.C. § 1087e(h) ..................................................................................................4

28 U.S.C. § 1291 .........................................................................................................1

28 U.S.C. § 1331 .........................................................................................................1

**Regulations**

34 C.F.R. § 685.206 ....................................................................................................4

34 C.F.R. § 685.212 ....................................................................................................4

**Rules**

Fed. R. Civ. P. 60(b) ........................................................................ *passim*

**Other Authorities**

Gov't Accountability Office, GAO-22-105365, Student Loans: Education Has Increased Federal Cost Estimates of Direct Loans by Billions Due to Programmatic and Other Changes, at 12 (July 2022), *available at* www.gao.gov/assets/gao-22-105365.pdf ..................................................24

## STATEMENT OF JURISDICTION

Plaintiffs agree that the district court had jurisdiction over the underlying case pursuant to 28 U.S.C. § 1331; that the district court entered final judgment on November 16, 2022, ER-139; and that this Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether two district courts clearly abused their discretion in declining to modify the terms of a settlement agreement that was incorporated into a final judgment over three years ago, where the courts found that, pursuant to Fed. R. Civ. P. 60(b)(5), the Defendants-Appellants failed to show that applying the judgment would no longer be equitable.

## INTRODUCTION

The U.S. Department of Education (the "Department") appeals the denial of two motions for relief from judgment, both of which were filed three years after that judgment was entered. The judgment incorporated a Settlement Agreement (the "Settlement") between the Department and the Plaintiffs, a certified class of federal student loan borrowers whose assertions of their statutory right to borrower defense to repayment the Department left in administrative limbo for years. The Settlement established a series of deadlines for the Department to resolve borrower defense applications and deliver Settlement relief. The Department failed to meet the very first of these deadlines, and others thereafter, even as Plaintiffs moved to enforce the Settlement and the court monitored its progress.

Both of the Department's motions, filed pursuant to Federal Rule of Civil Procedure 60(b)(5), sought to delay one of the last remaining Settlement deadlines, which was set for January 28, 2026. The Department filed its first motion approximately 12 weeks before the deadline, and the second motion six days before. Two different district court judges, one of whom had overseen this litigation since its inception in 2019, concluded that the Department failed to show that following the Settlement was no longer equitable, and accordingly kept the deadline in place, with one limited extension for a subset of class members until April 15, 2026. On

2

March 25, 2026, this Court denied the Department's motion for an emergency stay pending appeal.

Both the January 28 and April 15 deadlines have now passed. When they did, tens of thousands of class members obtained a vested right to relief under the Settlement. By its appeal, the Department now seeks to claw back those vested contractual rights, on the asserted basis that both district courts clearly abused their discretion by refusing to delay the deadline. This is an exacting standard, and the Department cannot meet it.

The district courts considered all the arguments that the Department makes now and concluded that no changed circumstances justified granting relief, nor did the equities favor the Department's request. The Department has not demonstrated that there was any abuse of discretion in these decisions, let alone clear abuse. The district courts' findings were supported by the record, and it was not legal error for the courts to consider the interests of the very people whom the Department's request for an extension would most affect. The Department also has not argued—let alone shown—that this Court should take the extraordinary step of rendering a retroactive judgment, which would be necessary to achieve the result the Department seeks.

Because the district court's judgments were sound, and the requested relief is not available, this Court should affirm the decisions below.

3

## STATEMENT OF THE CASE

Under the Higher Education Act (HEA), borrowers of federal student loans may assert a defense to repayment of those loans based on misconduct by the school they attended. *See* 20 U.S.C. § 1087e(h); 34 C.F.R. §§ 685.206, 685.212. Borrower defense ("BD") has existed since the mid-1990s, but was little used until 2015, when the Department faced an unprecedented influx of applications following the collapse of Corinthian Colleges and other large for-profit chains. *See* ER-141.[1] In February 2017, despite a growing backlog of unresolved applications, the Department brought the BD process to an unlawful standstill. *See* ER-142. This standstill remained in place for the better part of five years.

## I.    The *Sweet* Litigation

Plaintiffs initiated this suit in June 2019 to force the Department to restart the BD process, alleging that its failure to adjudicate BD applications constituted agency action unlawfully withheld or unreasonably delayed under the Administrative Procedure Act ("APA"). *See generally* 3-SER-730. On October 30, 2019, the district court certified a class of, *inter alia*, "[a]ll people who borrowed a Direct Loan or

---

[1] Citations to "ER" are to Defendant-Appellants' Excerpts of Record; "SER" are to Plaintiff-Appellees' Supplemental Excerpts of Record; "Br." are to Defendant-Appellants' opening brief; and "Dkt." are to filings in this appeal. Unless otherwise specified, all internal quotation marks, citations, and alterations are omitted from quotations throughout this opposition.

FFEL loan to pay for a program of higher education, who have asserted a borrower defense to repayment to the U.S. Department of Education, whose borrower defense has not been granted or denied on the merits," and who were not members of a class in a separate pending action. ER-142.

On April 7, 2020, after Plaintiffs and the Department briefed and argued motions for summary judgment, the parties executed their first attempt at a settlement agreement. Under this agreement, the Department would decide all pending BD claims within 18 months of final settlement approval. ER-143. The district court granted preliminary approval in May 2020. *Id.* Soon afterward, however, Plaintiffs' counsel learned that the Department had sent a large number of class members *pro forma* notices that denied their BD applications without any specific explanation of the reasons for the denial or the evidence on which the Department had relied. *See id.*; 3-SER-717–18, 3-SER-725–26. The Department admitted to the district court that it had denied 94.4% of the applications from class members that it considered over the previous nine months. 3-SER-726. The parties disputed whether the *pro forma* notices were legally adequate and whether they violated the proposed settlement agreement. *See* 3-SER-720–22.

The district court denied final approval of the settlement on October 19, 2020, finding that, given the parties' differing understandings of what the agreement required, there was "no meeting of the minds." *Id.* But moreover, the court

emphasized that class members were "entitled to a comprehensible answer" on their BD applications, yet instead they faced a "path forward [that] rings disturbingly Kafkaesque." 3-SER-718, 3-SER-720. Given this "strong showing of agency pretext," the court ordered the parties to conduct extra-record discovery to find out "what is really going on." 3-SER-727.

Based on materials adduced in discovery, Plaintiffs filed a Supplemental Complaint in May 2021 that augmented their delay-based claims. They alleged that the Department had adopted an unlawful "presumption of denial" policy for BD applications and issued thousands of unlawful form denial notices pursuant to this policy, in violation of Sections 706(2) and 555(e) of the APA and the Due Process Clause of the U.S. Constitution. 3-SER-634–35, 3-SER-707–11. In short, Plaintiffs alleged that the Department had implemented numerous policies that ensured the summary denial of the vast majority of BD applications without fair consideration. *See generally* 3-SER-647–78. For example, application reviewers were empowered to deny, but not approve, applications; they were given only minutes to review each one; they were permitted to ignore the Department's own findings of school misconduct; and they were not permitted to credit borrowers' sworn statements, even where those statements were corroborated by the applications of other borrowers— sometimes hundreds of them. *See* 3-SER-648–49, 3-SER-651–55, 3-SER-661–70. Plaintiffs moved for summary judgment on their Supplemental Complaint, seeking

6

an order to show cause why every outstanding BD application should not be granted immediately. *See* 3-SER-622–26.

## II.    The Settlement Agreement and Final Approval

Following a lengthy negotiation process, and with Plaintiffs' summary judgment motion pending, the parties entered the Settlement Agreement at issue here on June 22, 2022. ER-143–44, ER-172–211. The Settlement divides class members into three groups. The first group includes class members who had applied for BD on or before the Settlement's execution date and whose applications related to one (or more) of the 151 schools on a list appended to the Settlement, referred to in the litigation as "Exhibit C." ER-144, ER-177–178. As the parties explained to the district court, "indicia of misconduct" in the Department's records, along with a high volume of BD applications from former students of these schools, "led the Department to conclude that these Class Members were entitled to summary settlement relief without any further time-consuming individualized review process." 2-SER-466. Borrowers in this first group would receive automatic relief under the Settlement, consisting of discharges of their relevant federal loans, refunds of amounts paid, and credit repair ("Full Settlement Relief"), within one year of the Settlement's Effective Date. ER-144, ER-175, ER-177.

The second group consisted of class members who applied for BD on or before the Settlement's execution date, but not in relation to an Exhibit C school.

ER-144, ER-178–82. Those borrowers would receive decisions on their applications under a streamlined review process and according to a staggered schedule, with the timing based on how long the application was pending. *See id.*

The third Settlement group, the one at issue in this appeal, was referred to as the "Post-Class Applicants." ER-144, ER-182. This group consists of class members who applied for BD between June 23, 2022 (the day after execution of the Settlement) and the date of final approval, which occurred on November 16, 2022. *See id.* The Settlement required that Post-Class Applicants receive decisions on their applications no later than January 28, 2026, three years after the Settlement's Effective Date. *See id.*; 2-SER-422. If the Department did not issue a decision on a Post-Class Applicant's BD application by the deadline, they would receive Full Settlement Relief as defined in the Settlement. ER-144–45, ER-182. During the public comment period on the Settlement, 796 Post-Class Applicants signed a letter to the Court urging final approval, because the Settlement "ensures that the Department of Education meets strict measures, which have been proven necessary by the discovery in this case." 3-SER-551.

After the parties moved for preliminary approval of the Settlement, four schools named on Exhibit C moved the district court for intervention, raising various arguments that the Settlement was allegedly unfair to them. *See* ER-145. The court denied the schools' motions to intervene as of right, but allowed them permissive

intervention "for the sole and express purpose of objecting to and opposing the class action settlement."[2] 2-SER-550. Relevant to the present appeal, the intervenors raised the argument, pressed by the Department now (*see* Br. 8, 15–16, 19, 21, 24, 32–35, 46–48), that Post-Class Applicants were not properly considered members of the Plaintiff Class. *See* ER-160–61. The Department defended the inclusion of Post-Class Applicants in aspects of the Settlement as necessary to enable the Department "to meet the deadlines carefully negotiated and included in the Agreement." 2-SER-473–74. At this point, the Department was on notice that the Post-Class would be significantly larger than the Settlement's second group, with "approximately 179,000" Post-Class Applicants "as of September 20, 2022." 2-SER-469.[3]

In granting final approval of the Settlement, the district court considered and rejected intervenors' arguments related to Post-Class Applicants, holding that "the class certification order set no cut-off date for membership, so the class definition as

---

[2] The district court, the Ninth Circuit, and the Supreme Court all ultimately denied the intervenors' attempts to block implementation of the Settlement. *See* ER-164; 2-SER-413; *Sweet v. Cardona*, 121 F.4th 32 (9th Cir. 2024); Order List: 607 U.S. (Feb. 23, 2026), denying certiorari in *Everglades College, Inc. v. McMahon*, No. 25-492.

[3] The Department served its first required data report under the Settlement on February 27, 2023, which identified 205,448 Post-Class Applicants. 2-SER-410.

9

recited in that order clearly encompasses all of these [Post-Class] borrowers." ER-161. Further, the court reiterated the Department's obligations to the Post-Class and the then-known size of the Post-Class. ER-144–45; *see also* ER-161 (Post-Class applications will be decided "within three years on pain of automatic discharge of the loans"). The Department did not object to or appeal this or any other aspect of the district court's final approval order.

## III.    The Post-Judgment Proceedings

The parties have engaged in significant post-judgment motion practice in this case, primarily due to the Department's repeated failures to meet the Settlement's deadlines. *See* ER-004. As part of these post-judgment proceedings, the district court held regular status hearings throughout 2024 and 2025. *Id.* At those hearings, Plaintiffs repeatedly raised concerns about the Department's ability to meet the Post-Class decision deadline; the Department repeatedly stated in response that it intended to comply with the Settlement, and that any concerns over delay were addressed by the Settlement's term mandating automatic approval of Post-Class applications not decided by January 28, 2026.

For example, on March 13, 2025, Plaintiffs expressed their "serious concerns about the capacity of the borrower defense group to handle [Post-Class] adjudications." 2-SER-358. Plaintiffs asked the Court to order the Department to regularly report on its progress adjudicating Post-Class applications, 2-SER-360,

10

and for the Court to recommit the Department to the Post-Class decision deadline, because "we don't want . . . another drawn-out series of enforcement proceedings where the Government blows the deadline and then comes and says, well, we just need more time," 2-SER-361. The Court questioned whether the Department's counsel was "confident that you will honor the settlement agreement?", and counsel responded,

> "*The Department fully understands its obligations under the settlement agreement . . . [T]he Department is committed to honoring the settlement agreement.*"

2-SER-374–75.

At another hearing, on April 15, 2025, Plaintiffs again expressed their concerns about the Department's progress for the Post-Class, particularly given the large size of that group. *See* 2-SER-318–19, 2-SER-321. In response, the Department's counsel assured the court that

> "*the bottom line, though, is that, as Your Honor has pointed out, if the Department doesn't issue decisions by [the deadline], then the borrower is entitled to full settlement relief.*"

2-SER-323. Once again, the Court asked whether the Department was going to meet its deadlines; once again, the Department's counsel stated,

> "*[W]e understand that those are our obligations, and we're going to work on it.*"

2-SER-339.

Two months later, the Department revealed that it had only adjudicated a tiny

11

fraction of Post-Class applications. 2-SER-288. Plaintiffs asked the Court again to "instruct the Department . . . that the deadline for the post-class is firm, that there will be no further extensions," because "we don't want to . . . show up here on January 2nd, 2026, and have them say, 'Actually, we've still got 50,000 more to go. Can we have an extension, please?'" 2-SER-293–94. The court asked the Department's counsel, "[A]re you going to make the deadline?" 2-SER-294. Counsel responded,

> *"We have every incentive to make the deadline. I think, as both plaintiffs' counsel and you have said, if we don't, everyone who has not received a decision will be entitled to full settlement relief."*

2-SER-294. The court determined a further order was unnecessary, because "[i]t's already an order. That's in your settlement agreement that I reduced to an order." 2-SER-294.

Despite these on-record assurances, on November 6, 2025, the Department filed a motion pursuant to Federal Rule of Civil Procedure 60(b) to delay the Post-Class decision deadline by 18 months. ER-005. Plaintiffs opposed, submitting evidence of the harms Post-Class Applicants would experience from the Department's requested delay. *See generally* 1-SER-009, 1-SER-070, 1-SER-135. The evidence included sworn declarations from 34 Post-Class Applicants describing, among other things: how continuing to carry these loans on their credit

reports blocked them from access to credit for housing, transportation, and other life necessities; how they would not be able to advance in their careers or save for retirement; and how the stress of their unresolved BD applications caused physical and mental health symptoms. *See* 1-SER-226–29. One of these class members experienced homelessness because she was unable to access credit. 1-SER-053–54. Another suffers from recurrences of cancer, worsened by the stress of her loan situation. 1-SER-059–60. Another was denied a low-interest loan to pay for her father's funeral because of her student loan debt. 1-SER-071–73.

The district court held a hearing on December 11, 2025. Judge Alsup, who had overseen this litigation since its inception over six years ago, extensively addressed the Department's proposed plan to hire contract attorneys to review Post-Class applications. *See* ER-017–29. Counsel for the Department declined to provide an on-the-record "ironclad hell-or-high-water promise" that the Department would actually hire hundreds of contract attorneys to adjudicate Post-Class applications within a matter of weeks. ER-017–19. The court also explored at length the Department's assertions that the congressional appropriation to Federal Student Aid in July 2025 constituted "extraordinary circumstances" justifying eleventh-hour relief from its Settlement obligations, *see* ER-033–38, ER-065–67, ER-078–79; that leaving the Settlement's deadline in place would result in "windfall" relief to Post-Class Applicants, *see* ER-043–49, ER-071–72, ER-074; and that the government's

13

interests outweighed the delay-related harms experienced by Post-Class Applicants, *see* ER-038–43, ER-049–51, ER-060–65, ER-067–71, ER-075–76.

Ultimately, the court held that an 18-month delay was "just totally unacceptable" under the circumstances, particularly because the Department knew the general size of the Post-Class before final approval of the Settlement and, after approval, the Department repeatedly represented to the court that the adjudication process was on track. ER-083–87. The court weighed the "huge equity working in favor of the class" because "the student loan has been hanging over their head for how many years? How many decades? Wrecking their credit. . . . It's just not right. Congress didn't want that. Congress wanted these things adjudicated." ER-088.

The court granted in part and denied in part the Department's motion. It declined to alter the January 28, 2026, deadline for those Post-Class Applicants whose BD applications related to Exhibit C schools, noting that there was already significant common evidence relating to those schools that should help streamline the decision process. ER-088–89. For Post-Class Applicants from other schools, the court granted the Department an extension to April 15, 2026, to issue decisions on those applications. ER-089. The Department did not file a motion to stay the December 11 order in the district court, nor did it seek any other emergency relief before the January 28, 2026, deadline.

Judge Alsup retired at the end of December 2025, and the case was reassigned

14

to Judge Gilliam on January 8, 2026. ER-005. On January 22, 2026—six days before the Exhibit C Post-Class decision deadline—the Department filed a second Rule 60(b) motion, advancing nearly identical arguments. ER-005–06. The Department argued that the December 11 order was premised on errors of fact and law, and urged Judge Gilliam to reconsider Judge Alsup's decision. ER-007. Again, Plaintiffs opposed.

On February 24, 2026, Judge Gilliam denied the Department's motion, finding that the Department had not established any grounds for reconsideration. ER-007. Further, "the record amply reflects that Defendants have not shown (and indeed, cannot show) that any extraordinary circumstances beyond their control prevented timely action to protect their interests." ER-008. The court rejected, again, the argument that Post-Class Applicants are not Class Members, noting "that argument was already fully considered and rejected." ER-007.

The court did, however, grant an extension of the Department's deadline to appeal the December 11 order. ER-006. Soon after, the Department noticed an appeal of both the December 11 and February 24 orders. ER-093. Once again, the Department did not seek a stay in the district court, but it did file a motion for emergency stay pending appeal in this Court on February 27, 2026. Dkt. 6. Plaintiffs opposed, Dkt. 9, and the Court held oral argument on March 20, 2026.

On March 25, 2026, this Court denied the Department's motion. Dkt. 21. It

15

held that the motion "fails for several reasons," but "[m]ost fundamentally, the [Department] has not demonstrated that it is likely to succeed in showing that two district courts clearly abused their discretion in finding that no modification to the Settlement Agreement incorporated into the judgment was warranted under Rule 60(b)." *Id.* at 6. The Court, citing *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 385 (1992), noted that the Department "can point to no changed circumstances that render it inequitable to apply the same settlement agreement that it bargained for years ago," particularly given that the Department had known the full size of the Post-Class since at least February 27, 2023. *Id.* at 6–7. The remaining stay factors under *Nken v. Holder*, 556 U.S. 418 (2009), were "not sufficiently strong to outweigh the [Department]'s weak showing as to the likelihood of success on the merits." *Id.* at 7.

## STANDARD OF REVIEW

A district court's denial of a motion under Fed. R. Civ. P. 60(b) is reviewed for abuse of discretion, and the court "will reverse 'only upon a clear showing of abuse of discretion.'" *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000) (quoting *Molloy v. Wilson*, 878 F.2d 313 (9th Cir. 1989)). If the district court identified the correct legal standard, it abuses its discretion only if its findings of fact "were illogical, implausible, or without support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247,

1264 (9th Cir. 2009) (en banc). The Court may affirm a district court's Rule 60(b) decision "on any basis supported by the record." *Bailey v. Miller*, 368 F. App'x 802, 803 (9th Cir. 2010) (quoting *Dittman v. California,* 191 F.3d 1020, 1027 n.3 (9th Cir. 1999)).

## SUMMARY OF ARGUMENT

**I.** The Department cannot show that two district courts both clearly abused their discretion in denying its Rule 60(b)(5) motions to delay the decision deadline for the majority of Post-Class Applicants.

**A.** The court examined all the available information and evidence, balanced the equities, and found that the equities did not favor the Department. This was not an abuse, let alone a clear abuse, of discretion.

**B.** The Department's claims of "clearly erroneous factual findings" are based on misrepresentations of the record.

**C.** Nor did the district court make any legal errors: Post-Class Applicants are class members, and *Trump v. CASA* has no relevance here because that case does not address Rule 23 orders.

**II.** The Department fails to address the fact that the Settlement deadlines that its Rule 60(b) motions sought to extend, and that the December 11 order modified, have already passed.

17

**A.** Post-Class Applicants who did not receive decisions by their respective deadlines now have vested contractual rights to Full Settlement Relief. The Department does not identify any contract law principle that could justify clawing back these rights in the guise of "extending" an expired deadline.

**B.** Because the deadlines have passed, the only way for the Department to achieve its aim of reversing these rights and re-opening tens of thousands of Post-Class applications is through a judgment *nunc pro tunc*—retroactive to before January 28, 2026. But the Department has not requested such treatment, nor can it show that it's entitled to this form of extraordinary relief.

## ARGUMENT

### I. The District Court Did Not Clearly Abuse Its Discretion

In *S.E.C. v. Coldicutt*, 258 F.3d 939, 942 (9th Cir. 2001), this Court explained that *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992), established "a general, flexible standard for" Rule 60(b)(5) petitions. "Under *Rufo,* in order to grant a Rule 60(b)(5) motion to modify a court order, a district court must find 'a significant change either in factual conditions or in law.'" *Coldicutt*, 258 F.3d at 942 (quoting *Rufo*, 502 U.S. at 384). Modification "may be warranted when changed factual conditions make compliance with the decree substantially more onerous," or if "a decree proves to be unworkable because of unforeseen obstacles, or when enforcement of the decree without modification would be detrimental to the public

18

interest." *Id.* (quoting *Rufo*, 502 U.S. at 384). But "relief from a court order should not be granted . . . simply because a party finds 'it is no longer convenient to live with the terms' of the order." *Id.* (quoting *Rufo*, 502 U.S. at 383); *see also Navajo Nation v. Dep't of Interior*, 876 F.3d 1144, 1173 (9th Cir. 2017) ("Rule 60(b) relief should be granted sparingly to avoid manifest injustice and only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." (cleaned up)). For these reasons, modification "[o]rdinarily . . . should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." *Rufo*, 502 U.S. at 385.

The district court decisions in this case operated within this framework. Each court identified the relevant legal questions, then analyzed extensive record evidence to answer them. *See generally* ER-006–08, ER-015–79. Both concluded, based on that evidence, that the Department's requested modification to the Settlement was not warranted, except that Judge Alsup did grant the Department a brief extension, until April 15, 2026, to adjudicate the applications of Post-Class Applicants who did not attend Exhibit C schools. *See* ER-009, ER-080–91.

The Department does not dispute that the district court followed the correct legal standard. It argues, instead, that both district court judges incorrectly weighed the equities, made clearly erroneous findings of fact, and committed a clear error of law in considering Post-Class Applicants as members of the Plaintiff Class. None of

19

these arguments withstands scrutiny.

### A. This Court Does Not Re-Weigh the Equities on Abuse of Discretion Review

The Department spends most of its brief arguing that the equities favor its position. *See* Br. 24–37. But the equities of the Department's Rule 60(b) motions were extensively litigated below, and the district court twice found otherwise. The question now is whether both district courts clearly abused their discretion—a standard that, by definition, does not invite a reviewing court to substitute its own judgment of the equities. As explained in *National Wildlife Federation v. National Marine Fisheries Service*, 422 F.3d 782 (9th Cir. 2005), "it is not [the appellate Court's] task to weigh the evidence presented to the district court" when reviewing for abuse of discretion. *Id.* at 798. Rather, "[a]n abuse of discretion is a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *Id.* (quoting *Wing v. Asarco, Inc.*, 114 F.3d 986, 988 (9th Cir. 1997)). Abuse of discretion is "[a] significantly deferential test," which will only be satisfied if "the district court reaches a result that is illogical, implausible, or without support in inferences that may be drawn from the record." *Hinkson*, 585 F.3d at 1262.

Here, the Department does not, and cannot, argue that the record lacks support

20

for the district courts' conclusion that the equities favored Plaintiffs' position.[4] This alone is dispositive of the appeal, but it is worth noting several errors in the Department's argument regarding the equities.

For one, the Department's speculation about what relief Plaintiffs might have obtained if they succeeded on summary judgment (*see, e.g.*, Br. 18, 26–27, 30–31) is irrelevant to the equities. Plaintiffs' claims were resolved by the Settlement; although the Department might "regret agreeing to the settlement" now, "that does not form the basis for Rule 60(b)(5) relief—especially when[,]" as here, the Department "fully understands the implications of their decision" at the time of agreement. *In re Liu*, No. 24-3522, 2025 WL 1588736, at *1 (9th Cir. June 5, 2025) (citations omitted). "[S]trategic decisions made during the course of litigation" similarly "provide no basis for relief under [Rule] 60(b)(6)." *Schwartz v. United States*, 976 F.2d 213, 218 (4th Cir. 1992); *see also id.* at 218–19 ("A litigant weighs the chance of success against the probable cost of achieving that success through further litigation, all based on whatever limited information is available at the time. [Movant] necessarily undertook such a cost-benefit weighing . . . His was [a]

---

[4] The Department instead attempts a sleight-of-hand, ignoring the voluminous record evidence of harm to Post-Class Applicants by reference to its argument that these class members' interests should not have been considered at all. *See* Br. 31–33. As explained *infra* pp. 32–36, this position is legally untenable.

21

calculated, free, and deliberate [] choice . . . [and] he should not be relieved from it."); *Cummings v. Greater Cleveland Transit Auth.*, 865 F.3d 844, 846 (6th Cir. 2017) ("A settlor's remorse cannot alone justify abandoning [final] judgments. Else, the key virtue of settling cases—letting the parties move on after they each get some of what they want—would be lost.")

For another, the Department's assertions about the cost of the Post-Class deadline (*e.g.*, Br. 1, 14, 25, 39) are likewise irrelevant: the amount of Settlement relief is unrelated to whether the Department has a legal obligation to provide it.[5] These assertions are also misleading and artificially inflated. As Plaintiffs noted in the district court, the Department's record evidence did not explain how these alleged costs were calculated. *See* 1-SER-231–32.[6] The Department cannot, or at

---

[5] Moreover, a party cannot argue for Rule 60(b) relief "based on the 'exorbitant costs of complying'" where it was "'aware that additional costs would be incurred' due to the court's judgment"—here, the alleged costs of Post-Class Applicants receiving either approvals or relief by default. *Coleman v. Brown*, 922 F. Supp. 2d 1004, 1027 (E.D. Cal. 2013) (quoting *Agostini v. Felton*, 521 U.S. 203, 215–16 (1997)). "That these predictions of additional costs turned out to be accurate does not constitute a change in factual conditions warranting relief under Rule 60(b)(5)." *Agostini*, 521 U.S. at 216.

[6] The Department argues that the "terminal loan methodology" increased its cost burden, *see* Br. 42–43, but that methodology was established by a separate court order which found, after briefing and argument, that the Department could not reliably execute its relief obligations under the Settlement any other way, *see* 2-SER-407, 2-SER-393–402. The Department does not challenge that order, and if it was ever appealable, the time to appeal has long since expired.

22

least did not, reliably estimate how many Post-Class applications would have been approved if it had adjudicated them. The cursory estimate it submitted to the district court reflected its choice to prioritize decisions on applications where there was *less* evidence of school misconduct and *fewer* applications per school (a choice the district court found unreasonable under the circumstances). *See* ER-044–49, ER-058–61, ER-085–87. In other words, in order to declare that enforcement of the deadline constitutes a "windfall" for Post-Class Applicants (*e.g.*, Br. 25, 30, 35), the Department assumes that it would deny tens of thousands of applications from Exhibit C schools with known evidence of misconduct. This assumption would include denials for Post-Class Applicants from schools with such extensive records of misconduct that the Department separately decided that *all* students who attended over the course of many years would have their loans discharged, whether or not they applied for relief. *See* ER-046–47; 1-SER-137–39.

Furthermore, the federal government's own accounting establishes that much of this "windfall" debt would never be repaid even if it remained on the books: The GAO has estimated that the Department loses almost $9 for every $100 in student loans disbursed.[7] *See* Gov't Accountability Office, GAO-22-105365, Student Loans:

---

[7] There are reasons to believe that the portfolio of Post-Class Applicants' loans would be particularly unlikely to result in net gains for the Department over the life

Education Has Increased Federal Cost Estimates of Direct Loans by Billions Due to Programmatic and Other Changes, at 12 (July 2022), *available at* www.gao.gov/assets/gao-22-105365.pdf. In its motion for an emergency stay pending appeal, the Department admitted that almost all of the alleged cost of Post-Class relief consists of dischargeable loan balances; only five percent represents directly payable refunds. Dkt. 6 at 11. Once the accounting is done, then, it is deeply misleading to suggest that discharging a particular amount in loan balances would equate to that same amount in harm to "taxpayers," *see* Br. 15, 37, 43.

Meanwhile, weighing against these weaknesses in the Department's arguments, the record contained hundreds of pages of declarations from Post-Class Applicants about the irreparable, life-changing harms they would suffer from further delay, including lack of access to housing and transportation, inability to advance their careers or to retire, detrimental effects on their physical and mental health, and strains on their family relationships. 1-SER-230–33; *see generally* 1-SER-009–134.

---

of the loans. Students who attended for-profit colleges are statistically more likely to default than students who attended other types of institutions. *See* Dep't of Educ., Notice of Proposed Rulemaking, Student Debt Relief Based on Hardship for the William D. Ford Federal Direct Loan Program (Direct Loans), the Federal Family Education Loan (FFEL) Program, the Federal Perkins Loan (Perkins) Program, and the Health Education Assistance Loan (HEAL) Program, 89 Fed. Reg. 87130, 87143 (Oct. 31, 2024). More than 80% of Post-Class applications relate to schools on the Settlement's Exhibit C, most of which are for-profit colleges. *See* 1-SER-138.

24

Plaintiffs also offered the results of a survey of over 20,000 Post-Class Applicants who described the negative effects of further delay on their lives. *See* 1-SER-139–42. And this was on top of the evidence Judge Alsup had already considered over six years of litigation, including the Department's repeated breach of the Settlement's timelines and two years of close supervision of Settlement implementation, which informed his judgment about both the Department's administrative reliability and the substantial harms faced by Class Members during years of delay. As far back as October 2020, the court wrote: "Here, time is of the essence. We don't enjoy the luxury of seeking simply to forestall harm—it descended upon the class long ago. Our borrowers live under the severe financial burden of their loans."[8] 3-SER-727. The court did not abuse its discretion by finding that the equities favored the Plaintiffs.

---

[8] The Department gives away the game when it claims that there is no "statutory or regulatory requirement that the Department act on [BD] applications in any particular time (much less within the few years that the January 2026 deadline required)." Br. 36. This case has always been about the Department's failure to issue timely decisions on the merits of BD applications. *See* 3-SER-732–33, 3-SER-786–87. That the Department would, after nearly seven years of litigation and a settlement affecting hundreds of thousands of federal student loan borrowers, continue to insist that it has no obligation to ever issue BD decisions, says everything that needs to be said about the Department's sense of urgency regarding the right of Post-Class Applicants to a fair adjudication (and, in what is an issue for another day, the same right of hundreds of thousands of federal student loan borrowers whose applications, submitted after November 2022, are currently languishing at the Department).

### B. The District Court's Factual Findings Are Supported by the Record

The Department's repeated assertion that the district court "did not dispute" that "the threshold requirements for modification are met in this case" (Br. 17; *see id.* at 2, 23) is a gross mischaracterization of the record. If that were so, then presumably the court would have granted the modification the Department requested. Instead, the court actually found, among other things, that (i) there were no "changed circumstances," given that the Department had been aware of the size of the Post-Class for over three years, understood its obligations under the Settlement, and could have, but did not, notify the Court and Plaintiffs earlier about its alleged inability to comply with the January 28 deadline, *see* ER-007–08, ER-083–85; and (ii) the Department could have, but did not, modify its staffing and procedures to speed up Post-Class adjudications, regardless of recent congressional appropriations, *see* ER-008–09, ER-085–87. Neither of these findings was clearly erroneous.

***No changed circumstances.*** The Department cannot dispute that it was aware, at the time it jointly moved with Plaintiffs for final approval of that Settlement, that the Post-Class included over 179,000 people. *See* 2-SER-474. The district court specifically recited the Department's obligations to these Post-Class Applicants in

26

the final approval order, *see* ER-144–45, 161, and the Department did not object to or appeal any aspect of that order.[9]

Neither the size of the Post-Class nor the Department's Settlement obligations changed between the date of final approval on November 16, 2022, and the date almost exactly three years later when the Department filed its first Rule 60(b) motion. In the intervening years, the Department repeatedly represented to the court that it was aware of and intended to honor its obligations under the Post-Class provisions of the Settlement. *See supra* pp. 10–12. Although the Department now complains about inadequate congressional appropriations, *see* Br. 10, 30, it never once raised those concerns to the court.

---

[9] Indeed, at each stage of the intervenors' appeals of the final approval order, the Department defended the validity of the Settlement and emphasized the harms of any delay in its implementation. *See, e.g.*, 2-SER-443 ("The Court should not condone Intervenors' last-minute efforts to disrupt the carefully negotiated agreement reached after years of contentious litigation. Rather, the Court should again find that the settlement agreement is lawful and fairly accommodates the interests of both the Department and class members who are deserving of timely relief."); 2-SER-450 ("Intervenors' argument also overlooks the detrimental effects to borrowers of allowing the continued delay associated with their borrower defense applications."); Defs.' Resp. to Emergency Mot. for Stay Pending Appeal at 13, *Everglades College, Inc. v. Dep't of Educ.*, No. 12-15049 (9th Cir. Mar. 9, 2023) ("Any stay of the settlement agreement would substantially harm the Department, the plaintiffs, and the public."); Fed. Respondents' Opp. to App. to Stay Judgment at 38, *Everglades College, Inc. v. Cardona*, No. 22A867 (U.S. Apr. 12, 2023) ("Applicants' cavalier suggestion that any further delay could not matter to [Class Members] ignores the weight of financial uncertainty those borrowers will continue to experience until the settlement's discharges are effectuated.").

27

Nor did it raise any such concerns with Plaintiffs—even though the Settlement itself provided a procedure for just this type of circumstance. Paragraph V.D.5 of the Settlement states that, if Defendants "are reasonably prevented from or delayed in fully performing any of the obligations set forth in" the Settlement "due to extraordinary circumstances beyond Defendants' control," then Defendants "will notify Plaintiffs' counsel within 14 calendar days of Defendants' determination that they will not be able to fully perform their obligations." ER-190–191. That notification initiates a meet-and-confer process. ER-191. If the parties cannot "agree as to whether extraordinary circumstances exist or what the appropriate length of an extension is," then the Settlement authorizes Plaintiffs to "raise a claim of material breach . . . with the Court prior to the expiration of the [relevant] timelines," and Defendants can then "oppose the filing of such a claim upon the grounds of extraordinary circumstances." *Id.* The district court "will at that point have jurisdiction to determine whether Defendants are entitled to any extension of the deadlines . . . on the basis of extraordinary circumstances." *Id.*

The Department never invoked this provision. It never gave Plaintiffs any notice that the Department would be "reasonably prevented from or delayed in fully performing" its obligation to meet the Post-Class decision deadline, much less an opportunity to meaningfully meet and confer about it. Instead, in its first Rule 60(b) motion, the Department denied that it had any obligation under the Settlement to

28

inform Plaintiffs that it was going to breach the January 28 deadline, while disclaiming any responsibility for establishing the "extraordinary circumstances" necessary under the Settlement to justify a request for extension:

> As this motion makes clear, Defendants have now determined that they will not be able to meet the Agreement's deadline for adjudicating post-class applications. Whether or not that delay is due to 'extraordinary circumstances beyond Defendants' control'—a standard that does not govern the relief Defendants seek in this motion—Defendants have, as a courtesy, begun the meet-and-confer process set forth in Paragraph V.D.5 of the Agreement.

1-SER-256;[10] *compare* ER-061–64 (Department's counsel explaining that the Department "can comply with the agreement," ER-064). The Department's argument, however, proves too much. If the circumstances here were ***not*** extraordinary, and the situation was ***within*** the Department's control, then there was certainly no basis for granting relief under Rule 60(b).

Under these circumstances, both district courts were well within their discretion, and eminently reasonable in exercising that discretion, to deny Rule 60(b) relief. *See, e.g.*, *Navajo Nation*, 876 F.3d at 1174 (affirming denial of Rule 60(b) relief where movant "had ample opportunity" to address disputed issue earlier); *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 837 (7th Cir. 2005) (motion for

---

[10] This "courtesy" consisted of approximately 4 hours' notice before the Department filed its motion. *See* 1-SER-143–44, 1-SER-212–16. The Department gave Plaintiffs no notice at all before filing its second Rule 60 motion.

reconsideration is not "an appropriate place to slip in arguments that should have been made earlier") (cited in *Kingdom v. Lamerque*, 392 F. App'x 520, 522 (9th Cir. 2010)).

***No unforeseen lack of resources.*** The Department argues that the district court premised its decision to deny relief on the erroneous belief that the Department could adjudicate 170,000 applications in six weeks. Br. 43–44. The Department misrepresents the district court's finding. Judge Alsup premised his decision to deny Rule 60(b) relief on a number of equitable factors, including that Defendants had three years to adjudicate the Post-Class applications, that the Department's explanations of inadequate funding and staffing were suspect, and that class members faced substantial harms after already waiting three years for a decision on their BD applications. *See* ER-083–088.

The district court extensively discussed and considered the Department's "resource" arguments, and found them lacking. *See* ER-015–29, 033–38, 065–67, 074–75, 083–87. The court explained that the Department had three years to make sure it had the necessary resources to fulfill its obligations to the Post-Class, but it had not taken available steps to do so. ER-085–087. The Department also had three years to let Plaintiffs and the Court know whether it would need more resources or otherwise not be able to meet its obligations to the Post-Class. Instead, Defendants repeatedly assured Plaintiffs and the Court that it was on track to meet the January

28, 2026 deadline. *See supra* pp. 10–12. When Plaintiffs asked for data from the Department to check on progress with the Post-Class, the Department repeatedly told Plaintiffs that this data was not available. 1-SER-142–43. Plaintiffs and the Court thus had no choice but to trust the Department's assurance that it would respect the January 28 deadline. Given this context, it was not erroneous for the court to conclude that the Department's Rule 60(b) motion, filed less than twelve weeks before the deadline, did not establish facts demonstrating an entitlement to relief.

The Department's claim of error also misconstrues the Court's finding on the extensive evidence of misconduct that exists for Exhibit C schools, which the Department itself had acknowledged not only in its prior briefing (2-SER-469, 2-SER-471) but in its decisions to grant "group discharges" for a number of these schools (1-SER-138–39, 1-SER-145–208). More than 80% of Post-Class applications are associated with Exhibit C schools, 1-SER-138, but the Department chose to adjudicate applications from schools with fewer applications and less evidence of misconduct first, ER-122. The court found this approach unreasonable, observing that the "quickest way to get through the largest number of people would have been to take the Exhibit C schools because those were the most suspect schools and also involved the most people." ER-085. The court concluded that because this evidence of misconduct already existed, the Department should be able to process at least some significant number of Exhibit C Post-Class applications between

31

December 11, 2025, and January 28, 2026. ER-085, ER-088–89. The court did not, as the Department claims, find or even suggest that the Department could adjudicate *all* 170,000 applications in that time period; rather, the court found that it would not be equitable to extend the deadline for those applications the Department didn't adjudicate in time. ER-088.

In short, the court quite reasonably found that the Department's Post-Class predicament was an entirely foreseeable consequence of its own decisions, as it voluntarily entered into the Settlement and then spent three years neglecting its duties to the Post-Class. This finding is not clearly erroneous, and it correctly formed one basis (of many) for the denial of Rule 60(b) relief. *See Coleman*, 922 F. Supp. 2d at 1044 (Rule 60(b) relief not justified where "defendants are fully responsible for" failure to achieve settlement goals, as defendants "prevent[ed] themselves from achieving a long-term solution . . . without taking a number of steps that they could but are unwilling to take").

### C. The District Court Did Not Err by Treating Post-Class Applicants as Class Members, in Keeping with the Final Approval Order

The Department argues that the district court committed a clear legal error by treating Post-Class Applicants as class members, Br. 46–48, despite the fact that Post-Class Applicants' status as class members has been the law of the case for over three years, *see* ER-161. This argument is also, in large part, the basis for the

32

Department's argument on the equities, because it believes this allows it to sidestep the voluminous record evidence of delay-related harm to the Post-Class. *See* Br. 32–36. The Department is wrong on both counts.

To begin, regardless of whether Post-Class Applicants are defined as "class members" in the sense the Department argues, they undoubtedly have specific contractual rights and protections under the Settlement. The Department owed decisions to Post-Class Applicants on their BD applications within three years of the Settlement's Effective Date; if it did not provide those decisions, it would owe those borrowers Full Settlement Relief. ER-182. It could not have been an abuse of discretion, let alone a clear abuse, for the district court to consider Post-Class Applicants' contractual rights, including the consequences of altering or violating those rights, in deciding whether to modify the terms of the contract.

In any event, though, the district court was correct to follow its earlier ruling that established Post-Class Applicants as members of the Plaintiff Class. "Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012). "A court may also decline to revisit its own rulings where the issue has been previously decided and is binding on the parties—for example, where the district court has previously entered a final decree or judgment." *Askins v. U.S. Dep't of Homeland Security*, 899 F.3d 1035,

33

1042 (9th Cir. 2018). A district court's decision to apply the "law of the case" doctrine is reviewed for abuse of discretion. *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000).

Here, "the issue in question"—*i.e.*, the status of Post-Class Applicants as class members—had already been "decided explicitly . . . in [a] previous disposition," *Jingles*, 702 F.3d at 499, and that disposition was a final judgment, *see Askins*, 899 F.3d at 1042. Thus, it was well within the district court's discretion to decline to revisit it.

Moreover, the Department never challenged this ruling after final judgment issued, and both parties had relied on it since November 2022. As the Supreme Court has explained, even though an appellate court "is not bound by district court rulings under the law-of-the-case doctrine," "[w]hen an appellate court reviews a matter on which a party failed to object below, its review may well be constrained by other doctrines such as waiver, forfeiture, and estoppel." *Musacchio v. United States*, 577 U.S. 237, 245 (2016). "[F]orfeiture is the failure to make the timely assertion of a right." *United States v. Depue*, 912 F.3d 1227, 1232 (9th Cir. 2019) (en banc) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). The three-year gap between the district court's ruling that Post-Class Applicants are class members and the Department's current objection is sufficiently long that the Department's "claim for relief from the error is forfeited." *Puckett v. United States*, 556 U.S. 129, 134

34

(2009); *see, e.g.*, *United States v. Hougen*, 76 F.4th 805, 810 (9th Cir. 2023) (argument not raised during proceeding where alleged error occurred is forfeited). Indeed, as recently as the status hearings in this case throughout 2025, the Department never once objected, as it does now (Br. 33), that the Post-Class's interests were irrelevant to Settlement implementation. *See generally* 2-SER-359–65, 2-SER-317–24, 2-SER-288–94, 1-SER-271–75. Under these circumstances, it was entirely reasonable for the district court to rely on the law of the case.

Finally, *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), has no application here. *CASA* concerned "universal" injunctions that purported to apply to every person in the United States. *Id.* at 839. It did not involve a certified class, nor a Settlement Agreement that both parties willingly entered into. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1063 (7th Cir. 2025) ("Defendants here voluntarily undertook the obligations set forth in the Consent Decree; *CASA* involved nothing of the sort. Second, *CASA* involved a universal injunction that prevented the government from enforcing its policies against nonparties; this case involves a Rule 23 class action."). In fact, *CASA* itself specifically distinguished between "universal" injunctions and Rule 23 injunctions, noting that the former are disfavored because they "circumvent Rule 23's procedural protections." *CASA*, 606 U.S. at 849–50.

35

Here, the Plaintiff Class—including the Post-Class—is a specifically defined, easily identifiable group of people, all of whom submitted BD applications to the Department within a limited period of time. *See* ER-144–45. There can be no question that the Post-Class Applicants are and have been "before the court," *CASA*, 606 U.S. at 852: they filed comments on the Settlement between preliminary and final approval, 3-SER-551; their rights were considered and accounted for in the court's Rule 23 analysis, ER-160–61; and the parties proceeded—until very recently—on the mutual understanding that the Department's obligations with respect to the Post-Class were an integral part of Settlement implementation, *see supra* pp. 9–12. It is, frankly, absurd for the Department to now claim that Post-Class Applicants are strangers to this litigation, when the Department itself signed a contract agreeing to provide this group with specific rights and benefits.[11]

## II. The Retroactive Relief the Department Seeks Is Not Available to It

### A. The Deadlines Have Already Passed

The Department has asked this Court to reverse the district court's denials of its motions and modify the parties' Settlement to grant an "extension" of the Post-

---

[11] It is likewise absurd for the Department to argue that the Post-Class's rights are "not properly subject to enforcement in the district court through injunctive relief." Br. 35. The Settlement, which the Department agreed to, explicitly provides these terms for its enforcement. ER-186–92.

36

Class decision deadline to July 28, 2027. Br. 48. However, the relevant decision deadlines have already passed, and when they did, the right to Full Settlement Relief vested for any Post-Class Applicants who had not received a decision. The Department does not acknowledge or address this issue, although its proposed outcome would necessitate the reversal of vested relief for tens of thousands of class members, all of whom had been waiting more than three years for the Department to fulfill its Settlement promises.

According to the Settlement, "[i]f a Post-Class Applicant has not received a timely decision as required under Paragraph IV.D.1, that applicant **shall** receive Full Settlement Relief." ER-182 (emphasis added). For Post-Class Applicants for whom the deadline has passed without decision, "Defendants **shall** provide [them] with notice that the applicant will receive [Full Settlement] relief within 60 calendar days following the expiration of the applicable deadline." *Id.* (emphasis added). This requirement to provide notice is mandatory, triggering with the passage of the decision deadline. It accords with other provisions in the Settlement that provide Class Members with written notice to keep them apprised of their rights, *see, e.g.,* ER-177–78 (Settlement ¶¶ IV.A.3, IV.B.1)—it is not a prerequisite to establishing their rights, or an opportunity for the Department to relitigate their entitlement to relief. Then, the Settlement instructs that "Defendants **will** effectuate relief . . . no later than one year after the date that Defendants provide that applicant Written

37

Notice." ER-182 (emphasis added).

In short, the Department's obligation to provide relief to these Post-Class Applicants is established. The rights of Exhibit C Post-Class Applicants with unadjudicated applications vested on January 29, 2026, and the rights of non–Exhibit C Post-Class Applicants with unadjudicated applications vested on April 16, 2026. The Department does not contest this—in fact, it repeatedly acknowledged it below. *See, e.g.*, 1-SER-254 ("Under the terms of the Agreement, more than 190,000 [Post-Class Applicants] are now projected to receive full settlement relief . . . because the Department . . . will not be able to adjudicate their applications within the specified three-year timeline."); 1-SER-258 (recognizing "the requirement that [Defendants] be required to provide automatic full settlement relief to post-class applicants who do not receive a decision by January 28, 2026"). The Department recently provided Exhibit C Post-Class Applicants with unadjudicated applications the required notice that they are entitled to Full Settlement Relief. 1-SER-008.

Clawing back a party's contractually vested rights is a very different proposition than delaying a future deadline. The Department nowhere acknowledges the extraordinary nature of the relief it now seeks—and for good reason. There is simply no authority to justify it. The Department identifies no contract law principle that would support its effort to deprive its counterparty of vested contractual rights under the guise of an "extension" of a deadline that has already passed. *See Jeff D.*

38

*v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) ("An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law.").[12] And, as detailed below, the Department likewise cannot show that this is one of the narrow circumstances in which a retroactive judgment is appropriate. Once again, the Department's decision to wait until the last possible moment—

---

[12] Generally, when the United States is a party to a contract entered into pursuant to federal law, the federal common law of contract controls. *See Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989). "Rights against the United States arising out of a contract are property rights protected from deprivation or impairment by the Fifth Amendment." *Madera Irrigation Dist. v. Hancock*, 985 F.2d 1397, 1401 (9th Cir. 1993). Here, Post-Class Applicants with unadjudicated applications obtained a vested right in receiving Full Settlement Relief once the deadlines passed, because the Settlement leaves the Department no discretion: once the deadline passes, it must deliver that relief. *Cf., e.g.*, *Gypsum Resources, LLC v. Clark County*, 674 F. Supp. 3d 985, 1005–06 (D. Nev. 2023) (right under settlement was not "vested" for Fifth Amendment purposes where government defendant retained discretion to grant or deny project application). Permitting "too liberal an interpretation of the residual sovereign power of the government to override its contractual commitments would eviscerate the government's power to bind itself to contracts"—"[i]n addition to the moral offensiveness of allowing the government to break its promises." *Madera Irrigation Dist.*, 985 F.2d at 1401; *see also, e.g.*, *Ms. L. v. U.S. Immigration & Customs Enforcement*, 787 F. Supp. 3d 1110, 1120 (S.D. Cal. 2025) (interpreting settlement agreement between federal government and private plaintiffs, and quoting *Chula Vista Police Officers' Ass'n v. Cole*, 107 Cal. App. 3d 242, 247–48 (Cal. Ct. App. 1980): "Why negotiate an agreement if either party can disregard its provisions? What point would there be in reducing it to writing, if the terms of the contract were of no legal consequence? . . . What integrity would be left in government if government itself could attack the integrity of its own agreement?").

indeed, *after* the last possible moment—to raise any objections to the Post-Class deadline is fatal.

## B. *Nunc Pro Tunc* Relief Is Not Available Here

Because the January 28, 2026, and April 15, 2026, deadlines have passed, the Department would have to convince this Court to issue its judgment *nunc pro tunc*— retroactive to before the deadlines—in order to achieve the outcome it seeks. To begin, the Department did not address *nunc pro tunc* relief at all in its opening brief, and therefore has waived any argument that it is entitled to it now. *See Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1033 (9th Cir. 2008) ("Arguments not raised by a party in its opening brief are deemed waived."); *GCIU-Emp. Ret. Fund v. MNG Enters., Inc.*, 51 F.4th 1092, 1100 n.3 (9th Cir. 2022) ("The court will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." (cleaned up)).

But even if the Department requested such treatment, it cannot show that it is entitled to it. "*Nunc pro tunc* signifies now for then, or in other words, a thing is done now, which shall have [the] same legal force and effect as if done at [the] time when it ought to have been done." *In re Warren*, 568 F.3d 1113, 1116 n.1 (9th Cir. 2009). *Nunc pro tunc* judgments are meant to "mak[e] the record reflect what the . . . court actually intended to do at an earlier date, but which it did not sufficiently express or did not accomplish due to some error or inadvertence." *United States v.*

40

*Sumner*, 226 F.3d 1005, 1010 (9th Cir. 2000); *see also Justice v. Town of Cicero, Ill.*, 682 F.3d 662, 664 (7th Cir. 2012) (Easterbrook, J.) ("A judge has the power to change records so that they show what actually happened."). The power to issue orders *nunc pro tunc* "does not, however, allow the court to alter the substance of that which actually transpired or to backdate events to serve some other purpose." *Warren*, 568 F.3d at 1116 n.1; *see also Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995) ("The United States does not ask us to correct records to show what happened; it wants us to change history. Incantation of Latin phrases does not bestow such an Orwellian power.").

Here, the Department "cites no authority allowing a retrospective extension" of a deadline that has already passed. *United States v. Norman*, No. 15-cv-1506, 2015 WL 13816020, at \*1 (M.D. Fla. Oct. 5, 2015) (citing *Justice*, 682 F.3d at 664) (denying state government's untimely motion to intervene in *qui tam* action). No such authority exists, because doing so would "destroy the order and affect the rights of the parties thereunder. An order may be entered *nunc pro tunc* to make the record speak the truth but it cannot supply an order which in fact was not previously made." *Id.* at \*2 (quoting *Crosby v. Mills*, 413 F.2d 1273, 1277 (10th Cir. 1969)); *see also Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 747 (11th Cir. 2014) (*nunc pro tunc* order "cannot change substantive rights retroactively"); *In re IFC Credit Corp.*, 663 F.3d 315, 317 (7th Cir. 2011) (*nunc pro tunc* order "can't be

41

used to revise history").

The record here makes clear that the Department's post-facto request for relief from expired deadlines is not owing to "delay[] by or for the convenience of the court," but rather that the Department itself is "at fault," *i.e.*, a circumstance in which relief *nunc pro tunc* "is never done[.]" *Sage v. Cent. R.R. Co. of Iowa*, 93 U.S. 412, 417 (1876). The district court cautioned the Department at the close of the December 11, 2025, hearing: "This is the order. So if you want to appeal, I think you should appeal pronto." ER-091–92. The Department did not immediately appeal or even seek a stay of the December 11, 2025, order. Instead, it filed its second Rule 60(b) motion a mere six days before the January 28, 2026, deadline, again without seeking temporary relief. *See supra* p. 15. The Department did not file its notice of appeal until February 24, 2026.[13] ER-093–94. This Court then denied the Department's emergency motion for a stay pending appeal, finding that the Department was unlikely to succeed on the merits. Dkt. 21 at 6–7. Three courts thus rejected the Department's requested modifications to the Settlement with full knowledge that the

---

[13] The Department's delinquency in appealing the December 11 order not only obviates its entitlement to *nunc pro tunc* relief, but also highlights its overall lack of diligence with respect to Settlement deadlines. *See W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1524 (9th Cir. 1990) ("Whereas a request for an extension acknowledges the importance of a deadline, a retroactive request suggests that the party paid no attention at all to the deadline.").

Post-Class decision deadlines were either soon to pass or had already passed. These decisions were not inadvertent.

"Courts used to say that a single day's delay can cost a litigant valuable rights." *Justice*, 682 F.3d at 665. Here, the Department delayed for three years before even attempting to address its inability to meet the Post-Class decision deadline. The Department could not succeed in an argument that this Court should "backdate" its order to a time before the deadlines expired, *Warren*, 568 F.3d at 1116 n.1, even if the Department had raised that argument.

## CONCLUSION

For the reasons stated above, Plaintiff-Appellees respectfully request that this Court affirm the December 11, 2025, and February 24, 2026, orders of the district court.

Dated: April 23, 2026

/s/     *Rebecca C. Ellis*

Rebecca C. Ellis
Rebecca C. Eisenbrey
Eileen M. Connor
Noah Zinner
PROJECT ON PREDATORY
STUDENT LENDING
769 Centre Street
Jamaica Plain, MA 02130
rellis@ppsl.org

43

reisenbrey@ppsl.org
econnor@ppsl.org
nzinner@ppsl.org
Tel.: (617) 390-2669

*Attorneys for Plaintiff-Appellees
Theresa Sweet, Chenelle Archibald,
Daniel Deegan, Samuel Hood, Tresa
Apodaca, Alicia Davis, Jessica
Jacobson, and all others similarly
situated*

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this brief complies with the limits set forth in Ninth Circuit Rule 32-1(a)(1) because, excluding those portions specified in Fed. R. App. P. 32(f), it contains 10,325 words.

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.


Dated: April 23, 2026


/s/___Rebecca C. Ellis_____
Rebecca C. Ellis

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: April 23, 2026

/s/___*Rebecca C. Ellis*_____
Rebecca C. Ellis