No. 26-1136

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Theresa Sweet, *et al.*,

Plaintiffs-Appellees,

v.

Linda McMahon, Secretary of the United States Department of
Education, and the United States Department of Education,

Defendants-Appellants.

On Appeal from the United States District Court
for the Northern District of California

**REPLY BRIEF FOR APPELLANTS**

BRETT A. SHUMATE
  *Assistant Attorney General*

THOMAS PULHAM
SEAN R. JANDA
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7260*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3388*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ii

INTRODUCTION AND SUMMARY ............................................................................1

ARGUMENT ..................................................................................................................3

The District Court Should Have Granted the Department's Motions to Modify
the Post-Class Applicant Deadline..............................................................................3

     A.    The Threshold Requirements for Rule 60(b) Relief Are Met .....................3

     B.    The Equities Strongly Favor Modifying the Post-Class Deadline .............6

     C.    The District Court's Contrary Weighing of the Equities Is Subject
to Reversal.............................................................................................14

     D.    Plaintiffs' Timing-Related Objection Is Misplaced...................................20

CONCLUSION ............................................................................................................. 23

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Columbia Gas Trans., LLC v. RDFS, LLC,*
148 F.4th 163 (4th Cir. 2025) ................................................................... 18

*Garland v. VanDerStok,*
No. 23A82 (U.S. Aug. 8, 2023) ................................................................. 21

*Grand Canyon Tr. v. Provencio,*
26 F.4th 815 (9th Cir. 2022) ................................................................. 18-19

*Horne v. Flores,*
557 U.S. 433 (2009) ................................................................. 3, 10

*Navajo Nation v. Department of the Interior,*
876 F.3d 1144 (9th Cir. 2017) ................................................................. 12

*Rufo v. Inmates of Suffolk Cnty. Jail,*
502 U.S. 367 (1992) ................................................................. 5, 7

*Trump v. CASA, Inc.,*
606 U.S. 831 (2025) ................................................................. 17, 19

*United States v. Hinkson,*
585 F.3d 1247 (9th Cir. 2009) (en banc) ................................................ 15

*Warren, In re,*
568 F.3d 1113 (9th Cir. 2009) ................................................................. 21

**Rules:**

Fed. R. Civ. P. 60(b)(5) ................................................................. 3

## INTRODUCTION AND SUMMARY

The stakes of this appeal are stark: absent modification of the post-class adjudication deadline, the Department of Education must provide $11 billion in refunds and discharges to hundreds of thousands of non-parties whose claims for relief have not been adjudicated on the merits. It must do so even though materially changed circumstances since the agreement have dramatically increased the burden of implementing the settlement and the cost of missing the deadline. It must do so even though it has been diligently implementing the settlement with limited resources for years. It must do so even though it has almost completely finished implementing the settlement with respect to the parties to the litigation, including by providing $12 billion in relief to nearly 300,000 borrowers. It must do so even though the settlement provides relief that goes well beyond any relief that the post-class applicants could have received on the merits of any underlying claims. And it must do so even though Congress last year appropriated additional funds that will allow the Department to adjudicate the remaining applications with a reasonable extension. In these circumstances, the multibillion dollar windfall to post-class applicants that enforcing the deadline would cause is not supported by any principle of equity.

In response, plaintiffs barely engage with the Department's arguments on the merits. As to the threshold changed-circumstances inquiry, plaintiffs do not dispute that the Department could not have reasonably anticipated the unprecedented surge in post-class applications, instead shifting the discussion to the (irrelevant for these

purposes) assertion that the Department knew about the size of the post-class group around the time of final judgment. And plaintiffs have almost nothing to say about the court-ordered change in the scope of required relief that has increased the price tag by billions of dollars.

As to the merits, plaintiffs brush aside as "irrelevant" the staggering cost to the taxpayers of the relief required under the settlement and the fact that the relief goes well beyond any relief that plaintiffs (much less the post-class applicants) could have received on the merits. They do not discuss, let alone distinguish, the Supreme Court precedent that says otherwise. Nor do plaintiffs have any response to the Department's explanation for the many reasons that the post-class applicants' countervailing interests are comparatively minimal, including that their administrative applications are relatively recent, that they will receive decisions (even under the Department's proposed modification) on a rolling basis over the next fifteen months, and that their loans will remain in forbearance in the meantime. And on the fundamental question whether the post-class applicants are entitled to be treated as parties at all, plaintiffs again have no response on the merits, instead falling back on unsupported assertions about the law of the case and the purportedly limited reach of the Supreme Court's recent precedent making clear that equity is not concerned with relief to non-parties.

Beyond that, plaintiffs spend much of their brief raising various procedural objections to the Department's conduct. They discuss previous missed deadlines by

the Department. They assert that the Department delayed in filing its motion. And they complain that the deadline has already passed but the Department has not sought *nunc pro tunc* relief. Many of those objections are wrong on their own terms. But perhaps more importantly, plaintiffs fail to adequately connect any of those objections to the equitable balancing between the government's and the plaintiffs' interests that the government's Rule 60(b) motions called for. None can provide any firm basis for affirming.

## ARGUMENT

### THE DISTRICT COURT SHOULD HAVE GRANTED THE DEPARTMENT'S MOTIONS TO MODIFY THE POST-CLASS APPLICANT DEADLINE

As explained, under Rule 60(b)(5), a district court has authority to modify an injunction—including a consent decree—if there has been "a significant change either in factual conditions or in law." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quotation omitted). Once that threshold showing is met, the court is required to determine whether applying the judgment "prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). *See* Opening Br. 22-23. Applying that framework, it is plain that the Department was entitled to a modification of the judgment, and the district court abused its discretion in concluding otherwise.

#### A. The Threshold Requirements for Rule 60(b) Relief Are Met

At the outset, plaintiffs barely dispute that the threshold requirements for Rule 60(b) relief are met. As explained, significant unanticipated changes in the relevant

circumstances have rendered the settlement's requirements—and the cost of failing to meeting the post-class deadline—much more burdensome than the Department anticipated when it entered into the agreement. *See* Opening Br. 37-43.

1. First, during the post-class period, the Department experienced an unprecedented volume of borrower-defense applications. In that five-month period, the Department received more than 250,000 applications; no other comparable period since 2020 involved even a fifth of that number. The effect of that unprecedented and unanticipated surge in applications was twofold: it has been substantially more burdensome than the Department expected to adjudicate the post-class applications, and the financial impact of the Department's failure to meet the deadline is much greater than the Department anticipated. *See* Opening Br. 37-39.

Plaintiffs take issue with none of that. They do not assert that the Department did anticipate, or should have anticipated, a five-fold increase in applications at the time that it entered into the settlement agreement. Nor do they dispute the enormous additional burden that the unanticipated increase has placed on the Department's implementation.

Instead, plaintiffs' only response is to contend (at 26-27) that the Department was aware of the approximate size of the post-class pool by the time that the parties moved for final approval of the settlement but that it did not move for relief from the deadline until years later. The Department has already explained the error in this contention, *see* Opening Br. 39-40, and plaintiffs do not even attempt to engage with

4

that explanation. In brief, however, the point of the changed circumstances inquiry is to prevent a party from basing its request for modification on circumstances that it anticipated even as it "agreed to the decree." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 385 (1992). In this case, that agreement occurred when the parties executed the settlement before the opening of the post-class period, not when the parties moved for final approval (a motion that the agreement itself required the parties to file, *see* ER-195) or when the court entered final judgment. *See* Opening Br. 39-40. That execution date thus provides the relevant benchmark for assessing whether circumstances have changed. At most, plaintiffs' assertions regarding the Department's delay in moving for relief after it learned of the size of the post-class pool might be relevant to the equitable balancing, *but see infra* pp. 11-13, but those assertions are not relevant to the threshold requirements.

2. Independently, the threshold requirements for Rule 60(b) relief are met because the district court unexpectedly ordered the Department to alter its methodology for providing relief to the post-class applicants to go beyond the relief required by the settlement itself. The effect of that additional relief is that missing the deadline will cost the Department an additional "approximately $4.5 billion in discharges and approximately $194 million in refunds." ER-128; *see* Opening Br. 41-43.

Plaintiffs do not dispute that this court-ordered change in methodology reflects a relevant change in circumstances that may support Rule 60(b) relief. Instead,

plaintiffs' only discussion of this change comes in a single footnote, in which plaintiffs observe that the change was required "by a separate court order" that is not challenged in this appeal. Response Br. 22 n.6. True, but irrelevant. The Department's point is not that this Court should reverse the separate order requiring billions of dollars in additional relief; instead, the point is that the district court's entry of that order reflects a material change in the relevant circumstances sufficient to satisfy Rule 60(b)'s threshold requirements. And that relevant point is effectively undisputed.

**B.    The Equities Strongly Favor Modifying the Post-Class Deadline**

As the government explained in its opening brief, the equitable balancing required by Rule 60(b) strongly favors modifying the judgment to permit the Department additional time to adjudicate the post-class applications. In response, plaintiffs consistently fail to directly engage with the relevant equitable factors, instead quibbling around the edges of the Department's arguments and focusing inordinately on irrelevant or misapprehended details about the Department's conduct in implementing the settlement. Nothing in that response demonstrates that the equities support enforcing the settlement.

1. Plaintiffs fail to rebut the Department's demonstration that strict enforcement of the settlement's post-class application deadline will severely harm the government and the public. As explained, the financial effect of enforcing the deadline is staggering: the Department estimates that it will be required to provide

more than $11 billion in refunds and discharges (with hundreds of millions of dollars of that amount coming in the form of refunds) to post-class applicants whose claims have never been adjudicated on the merits. Opening Br. 25 & n.2.

As an initial matter, plaintiffs suggest that the cost of enforcing the settlement deadline is "irrelevant." Response Br. 22. But that is incorrect. The Supreme Court has made clear that the burdens of compliance are relevant to the Rule 60(b)(5) inquiry, *Rufo*, 502 U.S. at 384, and even more specifically, that courts must be attentive in the Rule 60(b)(5) context to "the public's right to the sound and efficient operation" of government agencies, *id.* at 381 (quotation omitted). The extent to which the Department will be required to expend enormous sums of taxpayer money to comply with the settlement as originally adopted is plainly relevant to both of those factors, as well as to the general equitable interests at stake. *Cf.* ER-088 (recognizing the "equity going" against requiring "taxpayers [to] pick up" the burden of relief that is not warranted on the merits).

Beyond that, plaintiffs assert in passing (at 22) that the Department failed to explain its methodology for calculating the relevant figures, but those numbers come from a sworn declaration from a high-level Department official that is in the record, *see* ER-128, and plaintiffs provide no basis for questioning their accuracy. Additionally, plaintiffs try to chip away at the true cost to the taxpayer by observing (at 23) that the Department would ultimately grant relief to some of the post-class applicants even if it adjudicated their applications on the merits and that the

7

Department will likely not collect on all of the post-class applicants' outstanding debt in any event. Plaintiffs' point is true as far is it goes. But even if the inquiry were properly focused on the portion of the $11 billion price tag reflecting debt that the Department would otherwise collect from post-class applicants not entitled to relief on the merits, that may still reflect a cost to taxpayers running into the billions of dollars. *Cf.* ER-128 (explaining that about 50% of the post-class adjudications have resulted in denials).

In addition, to the extent that plaintiffs complain that the magnitude of this effect is a result of the Department's decision to initially focus on resolving post-class applications related to "schools with a low number of applications" and schools with pending "group borrower defense requests," ER-122, that complaint reflects a misunderstanding of the relevant administrative processes. The Department began with those groups because that was the most efficient way to process applications as quickly as possible. Schools with fewer applications are "less likely to have evidence of school misconduct beyond the allegations in a particular application," which allows the Department to adjudicate the applications more quickly. ER-122. By contrast, the Department is likely to have more voluminous evidence relating to schools with more applications, and the need for "additional fact-finding" (which may include receiving and reviewing information not just from hundreds or thousands of borrower-defense applications but also from the schools themselves and third-parties) "can delay adjudication of" those applications. *Id.*; *see also* Opening Br. 44-46; *infra* pp. 16-17

(explaining similar error in district court's, and plaintiffs', apparent view that the Department could have easily adjudicated many post-class applications related to Exhibit C schools in the weeks before the deadline). The fact that more than 170,000 applications remained unadjudicated as of the deadline was a function of the extreme number of applications received, not a function of the Department's decisions regarding how to prioritize its resources.

2. The government's and the public's interests in modification of the settlement are also underscored by the sweeping relief provided by the settlement to post-class applicants. As explained, the underlying claims pressed by those applicants were that the Department had unreasonably delayed acting on their applications. Not only were those claims plainly meritless for the post-class applicants, whose applications had not even been filed at the time the settlement was agreed to, but even successful such claims could not support an order requiring the Department to provide substantive relief (as opposed to an order simply requiring adjudication of the applications). That the settlement provides the post-class applicants with relief they never could have validly obtained—and forces the Department to expend its limited resources trying to comply with requirements that are not supported by the underlying substantive law— weighs substantially in favor of modifying the deadline rather than enforcing the sweeping relief. *See* Opening Br. 26-30.

In response, plaintiffs nowhere dispute the government's point on the merits. They do not argue that they ever could have obtained relief on the post-class

9

applicants' substantive claims nor do they assert that such claims could permissibly have led to an order requiring the Department to provide substantive relief. Instead, they simply assert in passing that such arguments are "irrelevant." Response Br. 21. But the Supreme Court has disagreed, explaining that consent decrees may "exceed appropriate limits" when they are overbroad in this way (notwithstanding the party's agreement to the injunction) and that the "flexible" use of courts' modification authority is particularly important in such circumstances. *Horne*, 557 U.S. at 448-50. Plaintiffs do not discuss, let alone make any attempt to distinguish, that Supreme Court precedent.

3. Conversely, as the government has already explained, any interests that the post-class applicants have in strict enforcement of the settlement agreement are comparatively minor, even setting aside the question whether those interests receive weight in the equitable balancing at all, *but see infra* pp. 17-20. The post-class applicants have not waived any claims through the settlement agreement and thus need not rely on the settlement to protect their substantive interests. They will receive relatively timely decisions on a rolling basis even under the Department's proposed modification. And in the meantime, their student loans will remain in forbearance, ensuring that they do not have to make payments pending those decisions. Taken together, those factors substantially ameliorate whatever interest post-class applicants might have in strict enforcement of the deadline. *See* Opening Br. 35-36. Plaintiffs have no direct response.

4. Rather than directly engaging with the competing equities in modification of the deadline, plaintiffs spend much of their brief complaining about various aspects of the Department's previous implementation of the settlement and the timing of the government's motion. Plaintiffs' complaints are unavailing even on their own terms. And none provides any sound reason to refuse modification.

As an initial matter, plaintiffs state (at 25) that the Department has missed various other deadlines related to Groups One and Two (that is, the class members, rather than the post-class applicants) over the last three years of settlement implementation. But plaintiffs fail to explain the relevance of this point. There is no dispute that the Department has spent three years devoting enormous resources to implementing the settlement, including processing approximately 100,000 class member applications and providing billions of dollars in relief to hundreds of thousands of class members. In the course of that undertaking, the Department has not been able to perfectly comply with every deadline. But plaintiffs do not assert that the Department is currently out of compliance with the settlement's provisions nor do they assert that the post-class applicants have been prejudiced by the Department's previous, occasional delays related to some class members. It is thus unclear how those previous, resolved delays could support plaintiffs' assertion that equities support denying modification here.

Plaintiffs also contend (at 27, 29, 30-31) that the Department impermissibly delayed seeking modification of the settlement from the district court. But the

government has already explained the error in that contention, *see* Opening Br. 40-41, and plaintiffs nowhere engage with that explanation. When the Department learned the size of the post-class applicant pool, it promptly requested additional funds from Congress—in both 2023 and 2024—to enable the Department to hire the additional staff necessary to meet the settlement's deadlines. Plaintiffs cannot reasonably contend that equity compelled the Department to seek modification rather than seeking the resources necessary to comply.

Nor do plaintiffs dispute that it would have been futile—and, ultimately, an unnecessary burden on the parties and the court—for the Department to seek modification before Congress appropriated additional funds in 2025 and the Department was able to establish a plan to adjudicate the post-class applications within a reasonable time. Again, plaintiffs cannot reasonably contend that equity required that futile endeavor.

In this respect, this case is thus nothing like *Navajo Nation v. Department of the Interior*, 876 F.3d 1144 (9th Cir. 2017) (cited at Response Br. 29), where the losing party sought to use a Rule 60(b)(6) motion as a vehicle to seek leave to amend its complaint for a third time. In affirming the denial of that motion, this Court emphasized—among other problems with the party's motion—that the party was on notice of the deficiencies in its complaint, "at least at the time the Second Amended Complaint was filed," and that the party could have amended to address those deficiencies at that time. *Id.* at 1174. Not only does this case present entirely different

factual and legal circumstances (and an entirely different use of a different provision of Rule 60(b)), but regardless the Department could not have successfully moved to modify the judgment before it had secured from Congress the resources necessary to adjudicate the post-class applications with a reasonable extension. There was thus no unreasonable delay sufficient to justify denying the motion.

The error in plaintiffs' position is only underscored by their complaint that the government "had three years to make sure it had the necessary resources" but "had not taken available steps" to procure those resources. Response Br. 30. Of course, it is Congress that must provide the Department with the relevant resources, and the Department repeatedly requested them. Despite plaintiffs' assertions, they do not identify any concrete steps that they believe the Department could have taken to procure additional resources in the face of that congressional inaction. Nor do plaintiffs engage with the record evidence explaining in detail the resource limitations that faced the Department throughout this time and that prevented the Department from making additional progress on post-class applications. *See* ER-115-27.

Plaintiffs are also incorrect to assert that the Department "repeatedly assured Plaintiffs and the Court that it was on track to meet the January 28, 2026 deadline." Response Br. 30-31. In none of the colloquies that plaintiffs identify (at 10-13) did the Department state that it would be able to meet the deadline. Instead, those statements reflect the Department's understanding that the settlement established the deadline

and that (at least absent modification) post-class applicants would be entitled to relief if the deadline was not met. *See* Response Br. 10-12.

Finally, plaintiffs observe (at 28-29) that, in filing the Rule 60(b) motions, the Department did not use a particular process laid out in the settlement to address circumstances where the Department was unable to perform. But plaintiffs have expressly disavowed this argument previously. Although plaintiffs in district court initially moved to strike the Rule 60(b) motion for failure to follow those procedures, plaintiffs ultimately "withdr[e]w that motion." ER-055. In doing so, plaintiffs recognized that there would be no "value in striking th[e] motion and doing it all over again in two months." *Id.* Regardless, plaintiffs fail to identify the relevance of this point. Plaintiffs do not contend that the settlement process was intended to preclude the Department from invoking Rule 60(b)(5) to seek modification of the final judgment, as may any litigant subject to ongoing injunctive obligations. Nor do plaintiffs assert any prejudice from the Department's choice or claim that they may have been amenable to modifying the post-class deadline if only the Department had used the meet-and-confer process.

**C.     The District Court's Contrary Weighing of the Equities Is Subject to Reversal**

In short, the Department has demonstrated that it is eligible for Rule 60(b) relief, because circumstances have materially changed since it entered into the settlement agreement in 2022. And the Department has demonstrated that the balance

14

of the equities firmly supports the requested modification, given the strong public interest in not disbursing billions of dollars of relief to applicants who may not deserve it on the merits and the comparatively minimal interests of the post-class applicants in receiving automatic relief rather than receiving adjudications over the next year.

In concluding otherwise, the district court abused its discretion, and its orders should be reversed. As an initial matter, to the extent that plaintiffs contend (at 20-21) that this Court is not permitted to engage in any reweighing of the equities so long as the district court identified and applied the correct legal standard, that is incorrect. This Court has made clear that, even under an abuse of discretion standard, this Court must reverse if "the trial court's application of the correct legal standard" was "illogical," "implausible," or "without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) (quotation omitted). Even on its own terms, the district court's balancing of the equities in this case was illogical and implausible, for the reasons already given, and this Court should reverse. But in any event, the court's balancing was also premised on a clearly erroneous factual finding and a clear legal error.

1. The district court committed clear error when it concluded that the Department could adjudicate the 170,000 applications associated with Exhibit C schools in the six weeks between the December hearing and the January deadline. *See* Opening Br. 43-44.

15

Plaintiffs do not defend that factual conclusion on the merits. Instead, they claim (at 32) that the court "did not" "find or even suggest that the Department could adjudicate *all*" of the applications by the deadline. But plaintiffs are incorrect. The court thrice reiterated its conclusion that the government could adjudicate all of the Exhibit C applications by the deadline. The court stated: "All Class C school applicants – not Class C – Exhibit C must be adjudicated by the original deadline of the 28th of January, six weeks from now. I think it can be done." ER-088. The court stated again: "[I]t's possible to get this job done . . . . So that deadline will stand." ER-089. And a third time: "[Y]ou've already got 37 people who can work over the holidays and, in my judgment, get the Exhibit C schools completed." ER-090-91. That factual finding was clearly erroneous, was contrary to the evidence in the record, is not defended on the merits by plaintiffs, and provides a sufficient basis to conclude that the district court abused its discretion.

Regardless, even if plaintiffs were correct that the district court had only concluded that the Department could "process at least some significant number of" the applications before the deadline, Response Br. 31, the court still would have been clearly wrong. The government has already explained why: contrary to the district court's apparent belief about the ease of adjudicating Exhibit C applications, conducting those adjudications requires both an extensive school-wide fact-finding process (which includes collecting evidence from applicants, the school, and third parties) and an individualized determination about whether, based on the facts found,

16

each applicant is entitled to relief. *See* Opening Br. 44-46. Plaintiffs offer no argument—much less do they identify anything in the record—to support their apparent view that the Department could have conducted that extensive process for any, much less many, of the Exhibit C schools in six weeks.

2. The district court also committed legal error in treating the post-class applicants as class members whose interests were entitled to full weight in the equitable balancing. *See* Opening Br. 46-47; *see also Trump v. CASA, Inc.*, 606 U.S. 831, 841, 851-52 (2025). In response, plaintiffs nowhere defend the district court's legal conclusion about the status of the post-class applicants on the merits. They thus effectively concede that the settlement agreement expressly excludes the post-class applicants from the class and that the agreement's class definition—which has now been incorporated into the final judgment—is properly understood to supersede the original definition of the class, which lacked any cut-off point.

Rather than engaging with the government's arguments on the merits, plaintiffs primarily contend (at 33-34) that the district court determined—in 2022—that the post-class applicants were covered by the class definition and that the district court reasonably applied the law-of-the-case doctrine to prevent the government from challenging that conclusion now. Plaintiffs are wrong on all levels.

As an initial matter, although the district court's 2022 order considered whether the post-class applicants were treated fairly by the settlement and noted the court's view that the original class certification order "set no cut-off date for membership,"

17

the 2022 order did not consider the effect of the settlement agreement on the relevant class definition nor did it purport to override the limitations in that agreement on the scope of the class. *See* ER-160-61. Perhaps for that reason, the district court itself never invoked the law-of-the-case doctrine or considered whether it applied in these circumstances, even as it relied on the court's previous analysis of the issue on the merits. ER-007.

Regardless, plaintiffs cite no authority to support the conclusion that the law-of-the-case doctrine applies in these circumstances. For one, the "law of the case doctrine does not, and indeed cannot, limit the power of an appellate court to review a lower court decision." *Columbia Gas Trans., LLC v. RDFS, LLC*, 148 F.4th 163, 169 (4th Cir. 2025). That is a particularly important principle in this circumstance, given that it is not at all clear that the government would have had standing to appeal from the judgment—which it consented to—even if it disagreed with statements that the court made in approving it. The district court's earlier decision thus could not bind this Court now. Nor do plaintiffs cite any case law supporting the proposition—or attempt to explain, as a logical matter, how it could be true—that the law-of-the-case doctrine may apply in the context of a Rule 60(b) motion to prevent a party from claiming error in the very judgment that the party seeks to modify.

In any event, that doctrine does not apply where "the decision is clearly erroneous and its enforcement would work a manifest injustice" or where "intervening controlling authority makes reconsideration appropriate." *Grand Canyon*

18

*Tr. v. Provencio*, 26 F.4th 815, 821 (9th Cir. 2022) (quotation omitted). Here, any decision by the district court that post-class applicants are class members would have been clearly erroneous, as explained, and applying it to deny modification would work a substantial injustice given the equitable interests the government has identified in this case. And given the intervening Supreme Court decision in *CASA*, which makes clear the importance of specific attention to the question whether post-class applicants are in fact class members, reconsideration of any contrary conclusion would be appropriate.

Separately, plaintiffs contend that it does not matter to the equitable balancing whether the post-class applicants are parties, but that is incorrect. Plaintiffs' attempt (at 35) to distinguish *CASA* on the ground that this case involves a consent decree fails. The government does not challenge the district court's authority to enter the consent decree in the first instance. The question at this point is whether non-parties receiving benefits under the parties' agreement are entitled to full weight in the equitable balancing that is required as part of determining whether to modify the court's injunction. In light of *CASA*'s repeated admonitions that suits are "brought by and against individual parties" and that "party-specific principles" "permeate" the proper application of equity, 606 U.S. at 842, 844, it is clear that non-parties' interests are not on par with parties' interests for these purposes.

Separately, plaintiffs briefly assert (at 35) that *CASA* is irrelevant here because the district court certified a class under Rule 23. But the relevant point is that the

19

post-class applicants are not within the certified class. And to the extent that plaintiffs are suggesting that the existence of a certified class justifies extending relief even to those are not part of the class, that suggestion finds no support in *CASA* or logic.

Nor do plaintiffs advance the ball when they claim that the post-class applicants have "specific contractual rights," Response Br. 33, that the district court properly considered in denying the modification motion. For one, the post-class applicants themselves are not parties to the settlement agreement, even if the government has agreed to provide them with benefits as a result of the agreement. And regardless, as explained, contractual rights against the government cannot generally be enforced in district court. Thus, to the extent that the post-class applicants must now fall back on asserting such rights to support the district court's orders, that only highlights the ways in which the post-class applicants' attempts to enforce the settlement in district court do not properly stem from the equitable principles that court should have been applying. *See* Opening Br. 34-35.

### D. Plaintiffs' Timing-Related Objection Is Misplaced

In addition to their arguments on the merits, plaintiffs contend (at 36-42) that the government may not receive relief from this Court because the January 28 deadline has already passed and the government has not satisfied the requirements for *nunc pro tunc* relief. Plaintiffs are wrong on all scores.

As an initial matter, the fact that the January 28 deadline has already passed is irrelevant to the courts' exercise of their authority to modify or vacate the deadline in

the final judgment. Courts routinely modify district court orders (or agency actions) even after those actions have taken effect. For example, the Supreme Court and this Court routinely stay district court orders pending appeal even after those orders have taken effect. *See, e.g.*, *Garland v. VanDerStok*, No. 23A82 (U.S. Aug. 8, 2023) (staying "June 30, 2023 order and July 5, 2023 judgment"). And indeed, nearly every time this Court reverses or vacates a district court order on the merits, that order will have already taken effect or required some specific action before this Court intervenes; receiving an emergency stay of an order before its effective date is not a prerequisite to seeking appellate review.

And plaintiffs are wrong to suggest that any relief at this point would have to come as part of a *nunc pro tunc* order subject to certain restrictions. Indeed, the primary case cited by plaintiffs for that proposition refutes their point. There, this Court concluded that a "bankruptcy court acted within its discretion" in entering an order "waiving" a statutory "filing requirement even though the" filing deadline set by the statute "had passed." *In re Warren*, 568 F.3d 1113, 1115 (9th Cir. 2009). Although the Court stated that the bankruptcy court had erred in "designat[ing] its order as *nunc pro tunc* in an attempt to backdate the order to fall within the" statutory deadline, *id.* at 1116 n.1, the Court also held that the bankruptcy court had the substantive discretion to enter the order after the deadline—without any need to designate the order as *nunc pro tunc*, *see id.* at 1119. So too here: this Court retains the authority to reverse the

21

district court's orders and direct the court to modify the judgment and extend the January deadline, without any need to engage in a *nunc pro tunc* backdating of its order.

Finally, plaintiffs' discussion of the post-class applicants' purportedly vested rights is a red herring. Of course, the settlement agreement as written obligates the government to provide the post-class applicants with full relief if their applications were not adjudicated by the January deadline. But by the terms of the parties' own agreement, that obligation has always been—and remains—subject to modification by the district court under its Rule 60(b) authority. As a result, the post-class applicants have no ability to avoid modification or this Court's review simply because the agreement currently entitles them to relief—any more so than a party that receives a damages award as part of a court's judgment may claim a "vested right" to the money and thereby avoid modification or vacatur of the judgment after the fact. If plaintiffs had wished for the settlement agreement's durability and enforcement to be treated purely as a matter of contract law, they could have insisted on a settlement agreement that was not incorporated into a final judgment. Having chosen instead to ask for (and, as it happens, repeatedly invoke) the court's continuing oversight of the agreement, they must take the bitter with the sweet. And, in any event, the settlement agreement does not obligate the government to in fact provide any relief to the post-class applicants whose applications were not adjudicated until 2027—one year after the provision of notice of the missed deadline and entitlement to relief. *See* ER-182.

22

Thus, even on plaintiffs' own terms, there is no relief due and owing to the post-class applicants today, and no vested rights that could impede this Court's review.

## CONCLUSION

For the foregoing reasons, and those in the government's opening brief, the district court's denials in large part of the government's motions seeking an extension of the post-class applicant deadline to July 28, 2027, should be reversed.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

THOMAS PULHAM

*s/ Sean R. Janda*
SEAN R. JANDA
*Attorneys, Appellate Staff*
*Civil Division, Room 7260*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3388*
*sean.r.janda@usdoj.gov*

May 2026

23

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5664 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Sean R. Janda*
Sean R. Janda